IN the MATTER OF STATE of Wisconsin

v.

Bryan J. STANLEY: La Crosse Tribune,
Petitioner-Appellant,†

v.

CIRCUIT COURT FOR LA CROSSE COUNTY,
Honorable Ramona A. Gonzalez, Presiding,
La Crosse County Clerk of Circuit Court and
Bryan J. Stanley, Respondents-Respondents.

Court of Appeals

*No. 2010AP3120. Oral argument July 27, 2011.
—Decided March 15, 2012.*

2012 WI App 42

(Also reported in 814 N.W.2d 867.)

† Petition for Review filed.

663

664

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *James G. Birnbaum* and *Jessica T. Kirchner* of *O'Flaherty, Heim, Egan & Birnbaum, LTD.*, La Crosse. There was oral argument by *James G. Birnbaum*.

On behalf of the respondents-respondents, the Circuit Court for La Crosse County and the Honorable

*Ramona Gonzalez*, the cause was submitted on the brief of *David C. Rice*, assistant attorney general, and *J.B. Van Hollen*, attorney general. There was oral argument by *David C. Rice*.

On behalf of the respondent-respondent, *Bryan J. Stanley*, the cause was submitted on the brief of *Kristin M. Kerschensteiner* of *Disability Rights Wisconsin*, Madison. There was oral argument by *Kristin M. Kerschensteiner*.

Before Lundsten, P.J., Vergeront and Blanchard, JJ.

¶ 1. BLANCHARD, J. In 1985, Bryan J. Stanley was found not guilty of three homicide charges by reason of mental disease or defect (NGI, for not guilty by reason of insanity) and committed to institutional care. In 2009, this court determined that Stanley should return to the community on conditional release status. This triggered the need, on remand, for a conditional release plan addressing treatment and services to be provided to him during his conditional release, prepared by the Wisconsin Department of Health Services (DHS)[1] and the La Crosse County Department of Human Services.

¶ 2. A conditional release plan was prepared and submitted to the court, which placed the plan under seal, along with other related records, on the grounds that each constituted a confidential "treatment record," pursuant to Wisconsin's Mental Health Act, Chapter 51 of the Wisconsin Statutes. Thereafter, the La Crosse Tribune newspaper requested public release of any

---

[1] In July 2008, the agency formerly known as the Wisconsin Department of Health and Family Services was renamed the Wisconsin Department of Health Services, with no effect on any aspect of this appeal. For ease of reference, we consistently refer to this agency as DHS, even though it operated under its prior name during time periods referenced in this opinion.

sealed records in this case reflecting information on any of four topics. The court denied this request in an order now appealed by the Tribune. The Tribune also requests costs and fees in this case under WIS. STAT. § 19.37(2) (2009–10)[2] on the grounds that the court delayed its responses to the record request and withheld records it should not have withheld.

¶ 3. We conclude that: (1) of the four records the court placed under seal, at most three were requested by the Tribune, and thus only these three records are at issue in this appeal; (2) regarding the three requested records, two and a portion of the third are "treatment records" under the plain language of WIS. STAT. ch. 51 and no exception to required confidentiality exists; and (3) assuming without deciding that the Tribune could be entitled to costs and fees under WIS. STAT. § 19.37(2) if it had filed an original mandamus action, it did not file such an action and therefore it is not entitled to costs and fees under that statute.

¶ 4. Accordingly, we affirm the circuit court's order denying the request to unseal records except that we reverse and remand with directions to release a redacted version of one of the records, and we deny the request for costs and fees under WIS. STAT. § 19.37(2).

## BACKGROUND

¶ 5. Stanley was charged with three counts of first-degree intentional homicide. Stanley's crimes were the murders of a priest and two parishioners at a Catholic church. He entered NGI pleas, which were accepted, and he was committed to institutional care at Mendota Mental Health Institute. *State v. Stanley*, No. 2008AP197–CR, unpublished slip op. ¶ 2 (WI App. Nov.

---

[2] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated.

13, 2008). Over the course of the years that followed, Stanley petitioned for conditional release on multiple occasions, each of which was denied by the circuit court. In 2009, this court reversed a petition denial and remanded the matter to the circuit court. *Id.*, ¶¶ 2–3, 12, 23. As a result, DHS was required to "present to the circuit court for its approval" a conditional release plan, setting out "the conditions that will attach to Stanley's release." *Id.*, ¶ 23.

¶ 6. The circuit court held a hearing on March 31, 2009, to review a proposed conditional release plan. On or about that date, and again on or about November 17, 2009, the court ordered records in this case placed under seal, four in all, as described in more detail below.

¶ 7. On April 1, 2009, the Tribune, through its attorney, sent a letter to the court requesting "access to any and all records" that had been used in the March 31, 2009 hearing regarding the conditional release plan. In making this request, the Tribune referenced case law relying on Wisconsin's public records law.

¶ 8. On April 13, 2009, the Tribune, again by counsel, wrote to the county clerk of circuit court with a similarly worded request. On April 17, 2009, the clerk responded with a letter declining to release records sealed by the court, providing the following as a legal basis:

> Wis. Stat. § 19.35(1)(a) provides that you may review any public record except as provided by law. In this case the Court has ordered that portions of the record are sealed. I am also aware that the file may contain treatment records of Bryan Stanley which are confidential pursuant to Wis. Stat. § 51.30. It is clear ... that Bryan Stanley does not consent to the release of these records. Access to such treatment records without written consent is limited under Wis. Stat. § 51.30(4)(b), and there is no exception to allow

release of the sealed records in this situation without a court order.

¶ 9. The Tribune submitted additional letters to the court, in July and September 2009, advancing arguments for release of sealed records. In these letters, the Tribune narrowed the scope of its records request, as discussed in more detail below. There was no response to this correspondence by the court or the clerk.

¶ 10. On March 8, 2010, the Tribune filed a petition for supervisory writ with this court, naming as respondents parties that included the circuit court and the circuit court judge individually. The Tribune requested an order from this court directing the circuit court to release sealed records falling within the scope of its records request. We issued an order on April 30, 2010, denying the petition, noting that the circuit court had offered to hold a hearing regarding the records request, and concluding that this provided the Tribune with an alternative, and adequate, remedy to the supervisory writ proceeding.

¶ 11. On June 2, 2010, the circuit court granted intervenor status to the Tribune in this criminal commitment case. However, upon a motion for reconsideration from Stanley, the court reversed this ruling the following month, removing the Tribune from the case as an intervenor.

¶ 12. Although the Tribune remained in a nonparty status, on August 30, 2010, the court proceeded with the hearing it had scheduled on the Tribune's records request. At this hearing, the court denied the records request, entering the order that is the subject of this appeal on September 15, 2010, nunc pro tunc to the time of the August 30 hearing. The court affirmed its original decision to seal the records as confidential "treatment records."

¶ 13. On October 1, 2010, the Tribune filed a second petition for supervisory writ with this court, again seeking immediate release of the requested records and requesting all costs and fees allowable under WIS. STAT. § 19.37(2). By order dated November 24, 2010, this court denied this petition, on the grounds that the Tribune had an adequate remedy in an appeal from the circuit court's final order of September 15, 2010.[3]

## DISCUSSION

¶ 14. We identify the first issue on appeal to be the question of which particular sealed records are at issue. The second issue presented is the Tribune's

[3] As reflected in the facts recited in the text of this opinion, the procedural posture of this appeal is unusual. The Tribune was ultimately not a party to the criminal commitment case, and the only proceeding pending in this court is this appeal from an order entered in the criminal commitment case. However, even a person or entity not named as a party in an action may be considered "aggrieved," and therefore entitled to appeal from a judgment, if the person or entity has a substantial interest adverse to the judgment. *See Ford Motor Credit Co. v. Mills*, 142 Wis. 2d 215, 217–18, 418 N.W.2d 14 (Ct. App. 1987). Neither Stanley, nor the circuit court, which filed a brief in this appeal, take the position that the Tribune may not bring this appeal as the entity that sought specific records and pursued this litigation to the point of a final order, and was denied its request. *Cf. State v. Zien*, 2008 WI App 153, ¶¶ 34–37, 314 Wis. 2d 340, 761 N.W.2d 15 (former attorney general, as private party, not an "aggrieved party" with standing to appeal because she "is not happy with the outcome of the attorney general's or district attorney's litigation," in a mandamus enforcement action brought by the state under WIS. STAT. § 19.37(1)(b)). As explained below, however, the procedural history of this case precludes the possibility of the Tribune being awarded costs and fees under § 19.37(2), because the Tribune never filed an original mandamus action under § 19.37(1).

671

argument that the circuit court erred as a matter of law in failing to release sealed records at issue under the terms of WIS. STAT. § 51.30. The third issue is the Tribune's contention that it is entitled to costs and fees under WIS. STAT. § 19.37(2) as if it had prevailed in whole or in substantial part in an original mandamus action filed under § 19.37(1)(a).

¶ 15. We review all issues in this appeal de novo, because they involve purely questions of statutory interpretation that we decide independently. *See Mercy Care Ins. Co. v. Wisconsin Comm'r of Ins.*, 2010 WI 87, ¶ 26, 328 Wis. 2d 110, 786 N.W.2d 785.

¶ 16. Statutory interpretation begins with the language of the statute, and if the meaning of the statute appears plain from its language, we ordinarily stop there. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. Plain meaning may be discerned both from the words used in the statute and from the context. *Id.*, ¶ 46. This involves reading statutes "not in isolation but as part of a whole[,] in relation to the language of surrounding or closely-related statutes." *Id* .

## I. WHICH SEALED RECORDS ARE AT ISSUE AND WHETHER THE CIRCUIT COURT ERRED IN FAILING TO RELEASE THEM UNDER WIS. STAT. § 51.30

### A. The Records at Issue

¶ 17. Only the Tribune's narrowed July and September 2009 requests are at issue. In those requests, the Tribune took the position that records containing

672

the following information should be released: (1) the date of Stanley's release; (2) his address; (3) any conditions of his release; or (4) "[w]hat measures are imposed to ensure and monitor his compliance with the condition[s] of his release." The Tribune rests its arguments entirely on this four-part request. For this reason, we now compare the sealed records, which we have reviewed, to the four subjects identified in the Tribune's narrowed request, in order to determine which records were responsive to the request and therefore at issue in this appeal.

¶ 18. On or about March 31, 2009, the court ordered sealed the following three documents:

- a four-page proposed conditional release plan, in the form of a letter to the court, dated March 26, 2009, over the signature of a forensic case manager then working under contract with DHS;

- the court's one-page order for placement, an official, pre-printed court form signed by the court on March 31, 2009, approving the above-referenced conditional release plan; and

- a two-page notification letter to the court, dated March 27, 2009, from the same forensic case manager, notifying the court of communications between representatives of DHS and various parties (police, sheriff, district attorney's office, and La Crosse area Diocese of the Catholic church) regarding the hearing scheduled for the court to consider the proposed conditional release plan on March 31, 2009.

¶ 19. In November 2009, the court ordered sealed a fourth document. This is a letter to the court, dated November 12, 2009, from the same forensic case manager as in the above referenced letters, updating the

673

court on Stanley's progress on conditional release and proposing a new residence for him. On this conditional release plan update, the circuit court wrote, "Proposed placement approved, 11/17/09," and initialed that notation.

¶ 20. Comparing the Tribune request to each document in turn:

- The original conditional release plan reflects three pieces of information requested by the Tribune: (1) the new residential address proposed for Stanley by the DHS representative upon his release; (2) conditions of his release; and (3) measures "imposed to ensure and monitor his compliance with the condition[s] of his release."

- The original order of placement reflects two pieces of the information sought by the Tribune in records that existed at the time of its requests: (1) Stanley's new address (at least at that time) and corresponding phone number; and (2) what could be interpreted to be a date of release.[4]

- The notification letter does not reflect any information on any of the four topics identified in the Tribune's request, and therefore is not at issue in this appeal.

¶ 21. The conditional release plan update of November 12, 2009, requires more discussion. Its existence and its sealing were publicly noted on the court's

---

[4] Stanley suggests that the date of release is already known to the Tribune and therefore "moot" in this appeal. However, Stanley has not cited authority for the proposition that a record requester's knowledge of information in the records requested is relevant to the question of whether the records are confidential or available to the public, nor has Stanley developed a different argument in support of mootness.

Consolidated Court Automation Programs (CCAP) system, but the Tribune made no records request after it was created. The parties have not addressed the question of whether a court record that contains information sought by the Tribune, but created after the Tribune's last records request, must be considered an open court record under WIS. STAT. § 59.20(3)(a). However, for the reasons discussed below, even assuming without deciding that the conditional release plan update is at issue, we conclude that it is a confidential treatment record for the same reasons that the original conditional release plan is a confidential treatment record. The Tribune has raised no argument that might strip the latter treatment plan update of confidential status if the original plan qualifies as confidential. The plan and the updated plan are the same type of record created by the same treatment team for the same purposes. Therefore, for ease of discussion we will not separately address the updated conditional release plan further in this opinion.

¶ 22. With this background, we turn to the original conditional release plan and the order for placement approving that plan, each of which was placed under seal in March 2009. Our analysis begins with a summary of the statutes that provide the basis for the court's sealing orders.

## B. NGI and Confidentiality Provisions

¶ 23. WISCONSIN STAT. ch. 971 directs what is to be included in a conditional release plan:

[T]he department of health services and the county department under s. 51.42 in the county of residence of the person shall prepare a plan that identifies the treatment and services, if any, that the person will receive in the community. The plan shall address the

person's need, if any, for supervision, medication, community support services, residential services, vocational services, and alcohol or other drug abuse treatment . . . . The plan shall specify who will be responsible for providing the treatment and services identified in the plan.

WIS. STAT. § 971.17(4)(e)1.

¶ 24. Turning to the court's role in connection with a conditional release plan, each plan "shall be presented to the court for its approval." *Id.* We note that, given the arguments of the parties, it is significant that the "approval" at issue is not whether the committed defendant should be conditionally released. Conditional release has already been ordered before the plan is created. Instead, the court has an opportunity to exercise its discretion to approve (or, implicitly, to reject) the conditional release plan created by the treatment team.

¶ 25. While this is a criminal commitment case following an NGI finding under WIS. STAT. ch. 971, and not a WIS. STAT. ch. 51 civil commitment case, WIS. STAT. § 51.30, by its terms, applies to proceedings such as this one. Specifically, under the broad terms of § 51.30(7), the confidentiality requirements created under § 51.30 generally apply to "treatment records" in NGI cases.[5]

¶ 26. Turning now to the confidentiality provision, stated broadly, WIS. STAT. § 51.30 assigns confidential status to records involving, as relevant here, treatment for mental illness. "Treatment records" are

---

[5] WISCONSIN STAT. § 51.30(7) provides: "CRIMINAL COMMITMENTS. Except as otherwise specifically provided, this section [§ 51.30] applies to the treatment records of persons who are committed under chs. 971 and 975." Under WIS. STAT. § 971.17, a person may be committed to the care of DHS after being adjudicated NGI. Under WIS. STAT. § 975.06, a person could be committed to the care of DHS after being adjudicated as a sex offender.

defined as all records "created in the course of providing services to individuals for mental illness" maintained by DHS, its county branches or its staff, or by treatment facilities.[6] § 51.30(1)(b). These "treatment records" "shall remain confidential."[7] § 51.30(4)(a).

■

¶ 27. The meaning of "shall" in WIS. STAT. § 51.30(4)(a) is established. If the confidentiality provision applies, a court must treat the records as confiden-

---

[6] WISCONSIN STAT. § 51.30 provides in relevant part, with emphasis added:

> **(1)** DEFINITIONS. In this section:
>
> . . . .
>
> (b) "Treatment records" include . . . all . . . records that are created *in the course of providing services to* individuals for mental illness, . . . and that are maintained by [DHS]; . . . by treatment facilities; or by psychologists licensed under s. 455.04(1) or licensed mental health professionals who are not affiliated with a county department or treatment facility.

We note that § 51.30(1)(am), defining "registration records," contains some identical, relevant terms to those used in § 51.30(1)(b). Since the analysis would be the same for the matching language in each paragraph, we refer only to § 51.30(1)(b) in this opinion for ease of reference.

[7] WISCONSIN STAT. § 51.30(4)(a) provides, with emphasis added:

> **(4)** ACCESS TO REGISTRATION AND TREATMENT RECORDS. (a) *Confidentiality of records.* Except as otherwise provided in this chapter and ss. 118.125(4), 610.70(3) and (5), 905.03 and 905.04, all treatment records *shall remain confidential* and are privileged to the subject individual. Such records may be released only to the persons designated in this chapter or ss. 118.125(4), 610.70(3) and (5), 905.03 and 905.04, or to other designated persons with the informed written consent of the subject individual as provided in this section. This restriction applies to elected officials and to members of boards appointed under s. 51.42(4)(a) or 51.437(7)(a).

677

tial, unless an enumerated exception contained in § 51.30(4)(b) applies, or there is a "circumstance" (the term used in the statute for exceptions) that is comparable to an enumerated exception. *See* § 51.30(4); *see also Watton v. Hegerty*, 2008 WI 74, ¶ 19 n.13, 311 Wis. 2d 52, 751 N.W.2d 369 (" 'shall' has a mandatory meaning within § 51.30(4)(a)"); *Billy Jo W. v. Metro*, 182 Wis. 2d 616, 639, 514 N.W.2d 707 (1994) (explaining that courts may "release ch. 51 court records when the requested access fits within one of the statutory exceptions in sec. 51.30(4)(b) or when the requested access is comparable to" an exception).[8]

¶ 28. We now turn to the question of whether the circuit court erred in failing to release the sealed records at issue. This question turns on whether those records are "treatment records" subject to confidentiality.

## C. The Records at Issue as "Treatment Records" Subject to Confidentiality

■■

¶ 29. The general rule is that records used in court proceedings are open for public inspection, absent one or more of three exceptions. *See State ex rel. Bilder v. Township of Delavan*, 112 Wis. 2d 539, 554–57, 334 N.W.2d 252 (1983). The three exceptions are as fol-

---

[8] The Tribune does not argue that the court should have granted it access to the sealed records under WIS. STAT. § 51.30(4)(b) for a particular "circumstance" that matches, or is "comparable to," any enumerated exception. The twenty-eight enumerated "circumstances" by and large involve release, without permission from the defendant, to those who may be privy to treatment records as necessary to fulfill such roles as, for example, coordinating mental health treatment or providing emergency medical services. *See* WIS. STAT. § 51.30(4)(b)7. and 8.

lows: (1) a statute authorizes confidentiality; (2) there is a showing that disclosure would infringe on a constitutional right; or (3) a court uses its "inherent power to preserve and protect the exercise of its judicial function . . . when the administration of justice requires it." *Id.* The dispute here is whether the first of these exceptions applies to the records at issue on the grounds that they are confidential "treatment records" under Wis. Stat. § 51.30(1)(b) and (4)(a).

¶ 30. The *Bilder* court addressed public access to court records under a predecessor statute to Wis. Stat. § 59.20(3)(a).[9] *See Bilder*, 112 Wis. 2d at 551–57. Nonetheless, the *Bilder* court's reasoning applies equally here.

¶ 31. We pause to note that our focus here is on the mandate for public availability of court records under Wis. Stat. § 59.20(3)(a) and *Bilder*, and not on the requirements of the public records law.[10] Although the Tribune made reference to the public records law in

---

[9] Wisconsin Stat. § 59.20 provides in relevant part:

> **(3)** Offices where kept; when open. (a) Every . . . clerk of the circuit court . . . shall keep his or her office . . . open during the usual business hours . . . . With proper care, the officers shall open to the examination of any person all books and papers required to be kept in his or her office and permit any person so examining to take notes and copies of such books, records, papers or minutes therefrom except as authorized in [provisions not relevant to this appeal].

Stanley does not dispute that the current version of the statute is operative under the reasoning of *State ex rel. Bilder v. Township of Delavan*, 112 Wis. 2d 539, 334 N.W.2d 252 (1983) (interpreting Wis. Stat. § 59.14 (1979–80)).

[10] Subchapter II of Chapter 19 of the Wisconsin Statutes (Wis. Stat. §§ 19.21–39) addresses handling and public access to public records and property, and is referred to collectively here as the public records law.

its records requests, and does so again on appeal, it is clear that the Tribune could be entitled to no greater access to records under the public records law than under § 59.20(3)(a) and *Bilder*. *See Bilder*, 112 Wis. 2d at 551–57 (explaining that the open court records mandate is generally a stronger guarantee of public access than the public records law); *Law Offices of William A. Pangman & Assocs. v. Stigler*, 161 Wis. 2d 828, 838, 468 N.W.2d 784 (Ct. App. 1991) (observing that exceptions to disclosure of records held by clerk of courts are more limited than exceptions to the public records law). Moreover, the public records law treats as "exempt from disclosure" any record "specifically exempted from disclosure by" state law. WIS. STAT. § 19.36(1). Therefore, if we conclude that WIS. STAT. § 51.30(1)(b), (4)(a), and (7), specifically exempt from public disclosure any sealed record at issue here, then the substance of the public records law does not add anything to our analysis under § 59.20. *See Watton*, 311 Wis. 2d 52, ¶ 28.[11]

¶ 32. We now briefly summarize the arguments of the parties, which focus on the conditional release plan. The Tribune does not dispute that records reflecting treatment and services for someone such as Stanley, who is subject to a criminal commitment under WIS. STAT. § 971.17, can, in certain circum-

---

[11] The court stated in *Watton v. Hegerty*, 2008 WI 74, ¶ 28, 311 Wis. 2d 52, 751 N.W.2d 369:

> Because we conclude that the Mental Health Act by its terms defines statements of emergency detention as "treatment records," which it expressly exempts from disclosure without written informed consent or a court order, we need not address Watton's argument [under the public records law] that the balance of interests between Wisconsin's policy of open government and Gray's interests in keeping his mental health records private tips in favor of disclosure.

stances, be subject to confidentiality as "treatment records" under WIS. STAT. § 51.30. However, the Tribune argues that the statutory confidentiality requirement does not apply in these circumstances because the conditional release plan is a judicial record, which must be approved by the court before it is used, and that is placed at issue by the person seeking confidentiality.[12] More specifically, the Tribune contends (1) the conditional release plan is not a "treatment record," but is instead what the Tribune calls a "judicial record," created for purposes of judicial review, and (2) even if the conditional release plan could be deemed a "treatment record," Stanley placed his mental health at issue under the so-called "litigation exception" to the privilege covering communications regarding medical treatment. *See* WIS. STAT. § 905.04(4)(c).

¶ 33. For his part, Stanley does not dispute that the records at issue were used in court proceedings, and that, in general, records that might otherwise be subject to confidentiality under WIS. STAT. § 51.30 may lose that status in the course of litigation. However, Stanley argues that all conditional release plans are prepared as part of an ongoing treatment process *after* any litigation necessary to determine whether conditional release of the committed person is appropriate, and so each conditional release plan is a confidential "treatment record" under the plain language of § 51.30(1)(b), (4)(a), and (7) and related statutes. Under this view, the

---

[12] We recognize that the Tribune may be arguing, somewhat more broadly, that any record submitted to, reviewed by, or created by a court cannot be a "treatment record" entitled to confidentiality. However, the precise scope of this argument does not matter under the analysis we use, and for ease of reference we use an "approved by" the court formulation.

681

fact that courts have authority to approve or reject conditional release plans does not change the result under § 51.30.

¶ 34. For the following reasons, we agree with Stanley that conditional release plans are confidential records under these statutes, and therefore the court correctly applied the law in ordering the plan in this case sealed and in denying the request to unseal it. However, applying the same statutory provisions, we also conclude that an order of placement is not a treatment record, and therefore the order in this case should not have been sealed, except the portion of the order reflecting Stanley's placement address and phone number.[13] The address and phone number reflect information about "residential services" taken from the conditional release plan, and therefore this portion of the order should remain confidential. We first analyze the conditional release plan, then turn to the placement order.

## The Conditional Release Plan

██

¶ 35. For the following reasons, we conclude, based on the plain language of Wis. Stat. § 51.30(1), (4), and (7), as well as relevant provisions of Wis. Stat. ch. 971, that the court properly sealed the conditional release plan as a "treatment record" and properly denied the Tribune's subsequent request to unseal it.

---

[13] As referenced above, the order reflects a phone number corresponding to the address proposed for Stanley in the initial conditional release plan. Because this phone number may be used, in effect, to reveal the address, we consider the phone number and the address to be a single unit of address-related information for all purposes in this opinion.

682

¶ 36. This court directed state and county officials to create a comprehensive list of "treatment and services" that the officials believed would be available and necessary for Stanley's conditional release, pursuant to WIS. STAT. § 971.17(4)(e)1. Treatments and services to be matched to Stanley's needs include "supervision, medication, community support services, residential services, vocational services, and alcohol or other drug abuse treatment." It is clear from the language of § 971.17(4)(e)1. that this detailed plan should not include any information *not* related to those treatments and services. No other topics are mentioned as necessary elements of the plan.

¶ 37. Based on these statutory terms, the context, and closely related statutes, it is plain that all such plans are, by statutory definition, "treatment records." They are "created in the course of providing *services* to individuals for mental illness," and thus should be deemed confidential. *See* WIS. STAT. § 51.30(1)(b) (emphasis added). The term "services" in § 51.30(1)(b) ties directly to use of that term in WIS. STAT. § 971.17(4)(e)1. ("shall prepare a plan that identifies the treatment and *services,* if any, that the person will receive in the community") (emphasis added). We discern no legislative intent to limit the scope of records intended to be protected as confidential under § 51.30(1)(b) through the use of the word "services" instead of the longer phrase "treatment and services," particularly since the focus of § 51.30(1)(b) is on "*treatment* records." (Emphasis added.) Conditional release plans are a forward-looking version of the ongoing, day-to-day provision of treatment and services that occurs while the person is still in institutional care. A plan charts a course for the continuation of treatment and services when there is a shift from the institutional to the community setting.

¶ 38. As referenced above, the Tribune makes two arguments on this topic. The first is that a conditional release plan is not a "treatment record" under WIS. STAT. § 51.30(1)(b) and (4)(a). The second is that, even if a conditional release plan could be deemed a "treatment record," a person in Stanley's position who seeks conditional release under a plan places his or her mental health at issue under the so-called "litigation exception" to the privilege covering communications regarding medical treatment. *See* WIS. STAT. § 905.04(4)(c). We address these contentions in turn.

¶ 39. The Tribune contends that, under the statutory scheme in WIS. STAT. ch. 971 described above, the legislature established a central role for courts in the conditional release process, and in doing so expressed an intent that a conditional release plan is a public court record, or as the Tribune calls it, a "judicial record," which is inconsistent with an intent that the plan be deemed a confidential "treatment record." However, we conclude that this argument incorrectly assumes an automatic and fatal conflict between court approval of a plan and plan confidentiality. More generally, we conclude that this argument is not grounded in the plain language of the statutes.

■■

¶ 40. The Tribune fails to explain why, based on the terms of any relevant statute, we should conclude that the following two legislative choices are inconsistent with one another: (1) the court has a role in approving or rejecting conditional release plans created by treatment professionals; and (2) conditional release plans shall remain confidential. No statutory language cited by the Tribune suggests that the fact that a court is given responsibility to approve or reject a treatment plan that would otherwise constitute a "treatment

record" strips the plan of its confidential status. To the contrary, the legislature plainly made WIS. STAT. § 51.30 applicable to the treatment records of persons committed under WIS. STAT. ch. 971, *see* § 51.30(7), knowing full well the role courts have in approving conditional release plans. We presume that the legislature enacts statutes with knowledge of the law. *See State v. Grady*, 2006 WI App 188, ¶ 9, 296 Wis. 2d 295, 722 N.W.2d 760, *aff'd,* 2007 WI 81, 302 Wis. 2d 80, 734 N.W.2d 364. In addition, we presume that the legislature would have been aware of the first exception in *Bilder. See Grady*, 296 Wis. 2d 295, ¶ 9. It is unreasonable to argue, in light of *Bilder*, that a record loses confidential status under § 51.30 when a court approves it.

¶ 41. At oral argument, the Tribune argued that a conditional release plan is not a "treatment record," because it describes only "future" treatment to be received, not treatment already received. This is a strained distinction that ignores the context of the phrase "records . . . created in the course of providing services." *See* WIS. STAT. 51.30(1)(b). A person deemed suitable for conditional release is already receiving treatment and services under plans used in the institutional setting. A conditional release plan addresses the needs of the person at the time the plan is created and then projects over the months to come those treatments and services suitable for the person's needs, *based on then-current treatment modes and results.*

¶ 42. Moreover, the Tribune's interpretation of the WIS. STAT. ch. 51 confidentiality provisions leads to absurd results. First, under the Tribune's approach, any mental health treatment recommendation or plan not yet implemented would not be confidential, whether for a WIS. STAT. ch. 971 subject or a routine private therapy patient. This approach would under-

mine the obvious purpose of protecting information relating to mental health treatment. Second, the confidentiality of mental health treatment records would change on a day-to-day, perhaps even entry-to-entry, basis depending on whether any given record entry could be characterized as information about "future" treatment.

¶ 43. The Tribune makes a series of other arguments in support of its "treatment record" argument, each essentially in support of the proposition that the legislature could not have intended to include conditional release plans in the category of "treatment records." To the extent they are developed, these arguments effectively urge this court to adopt policy choices not tied to the statutory terms enacted by the legislature, which we cannot do. For example, the Tribune contends that construing relevant statutory provisions in favor of confidentiality in this context produces a "frightening" result, because withholding conditional release plans from public inspection undermines public understanding of and confidence in the manner in which criminal commitment cases are handled. In a similar vein, the Tribune contrasts the sealing of a conditional release plan with what it submits is the more transparent process used when a defendant is subject to the reporting requirements of Wisconsin's Sex Offender Registration. However, these are policy positions that must be directed to the legislature, not the courts. As we have explained, the legislature has struck a balance between privacy rights and the need for public scrutiny and that decision is reflected in the plain language of the statutes. If the balance needs adjustment, that is a legislative matter. *See Daniel A. v. Walter H.*, 195 Wis. 2d 971, 999, 537 N.W.2d 103 (Ct. App. 1995) (observing, in context of interpretation of

686

WIS. STAT. § 51.30, "[w]e cannot add exceptions to a statutory privilege under the aegis of public policy").

¶ 44. The Tribune makes a related contention that, because information bearing on mental health treatment is often referenced in public court records in criminal prosecutions and proceedings involving the supervision of probationers, the conditional release plan cannot be a confidential record. It is sufficient on this point for us to note that WIS. STAT. § 51.30(7) provides that § 51.30 applies "to the treatment records of persons who are committed under chs. 971 and 975," not to other records.

¶ 45. Further, the Tribune acknowledges that litigation between the State and Stanley at the bench trial in which the circuit court denied his petition for conditional release (reversed by this court on appeal) was conducted in a manner that permitted public scrutiny. *See Stanley*, No. 2008AP197–CR.[14] Thus, our interpretation of WIS. STAT. § 51.30 in this context does not extend, to an absurdly broad extent, a "cloak of secrecy" over all aspects of an NGI case after a committed person seeks conditional release, as the Tribune suggests.

¶ 46. The Tribune contends that the circuit court erroneously rested its decision on the conclusion that

---

[14] The bench trial publicly revealed details on such topics as: the history of Stanley's mental illness and treatment; his psychiatric hospitalizations; specific antipsychotic drugs he had been prescribed at different times; and conditions of his confinement and supervision at Mendota. *State v. Stanley*, No. 2008AP197–CR, unpublished slip op. ¶¶ 4–11 (WI App. Nov. 13, 2008); *see also* WIS. STAT. § 757.14 (sittings of court generally open to public). In addition, the public record included testimony from a forensic case manager about components likely to be included in Stanley's conditional release plan in the event of conditional release.

687

this criminal case was "transform[ed]" into a civil commitment proceeding when Stanley was found NGI. However, we review a legal issue of the type presented here based on the language of the statutes, not on any particular observation made by the circuit court. As to the merits of this observation, the Tribune fails to develop a legal argument as to how the characterization of this case as being "criminal/penal" in nature or instead "civil/remedial" in nature might assist us in determining whether the confidentiality provisions apply to the records at issue, given the clear language of Wis. Stat. § 51.30(7) directing that § 51.30 applies to treatment records of persons committed to the care of DHS after being adjudicated NGI.

¶ 47. As another approach on the "treatment records" issue, the Tribune points to records of unrelated criminal commitment cases in which, it is averred by affidavit, conditional release plans were not placed under seal. However, even if we were to assume that in those cases committed persons did not consent to release of their treatment records, these examples would, at most, stand for the proposition that public disclosures occurred in potential violation of Wis. Stat. § 51.30 and these averments shed no light on the legal issue before us.[15]

---

[15] The Tribune also suggests briefly that, under its interpretation of changing versions of Wis. Stat. § 971.17 over the years, DHS should not have prepared a conditional release plan in the first place, given the timing of Stanley's commitment. However, the Tribune does not develop an argument supported by legal authority explaining why, even if its interpretation of the history and meaning of § 971.17 is correct, the plan must be unsealed. Therefore, we decline to address the argument. *See* Wis. Stat. Rule 809.19(1)(e); *State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992).

¶ 48. We now turn to the Tribune's second major argument. The Tribune contends that, even if the plan were a "treatment record," Stanley placed his mental health at issue under WIS. STAT. § 905.04(4)(c) when he petitioned for conditional release, thereby removing the shield of confidentiality. Section 905.04(4)(c) is the so-called "litigation exception" to the privilege covering communications regarding medical treatment.[16] *See* DANIEL D. BLINKA, 7 WIS. PRAC., WIS. EVIDENCE § 504.4 (3d ed. 2008). The Tribune's argument rests in part on the fact that the confidentiality provision explicitly incorporates the privilege and its exceptions. *See* WIS. STAT. § 51.30(4)(a) ("Except as otherwise provided in this chapter and s[]. . . . 905.04"). The Tribune relies on *State v. Taylor*, 142 Wis. 2d 36, 417 N.W.2d 192 (Ct. App. 1987), in making this argument.

▮

¶ 49. As we now explain, the instant case presents an entirely different context from the one in *Taylor*, and so that case does not help the Tribune. For the same reasons, the litigation exception does not apply here.

---

[16] The general rule is that a patient has a privilege

> to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's . . . mental or emotional condition, among the patient, the patient's physician, . . . the patient's registered nurse . . ., the patient's psychologist, [and] the patient's social worker . . . .

WIS. STAT. § 905.04(2). Under the exception, this privilege is not available "as to communications relevant to or within the scope of discovery examination of an issue of the . . . mental or emotional condition of a patient in any proceedings in which the patient relies upon the condition as an element of the patient's claim or defense . . . ." § 905.04(4)(c).

¶ 50. Taylor entered an NGI plea, which required him to prove that he suffered from a mental disease or defect and as a result lacked substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. *See* WIS. STAT. § 971.15(1) (1985–86); *Taylor*, 142 Wis. 2d at 38. Taylor had a history of psychiatric treatment predating the offense, reflected in treatment records sought by the State as part of the initial NGI litigation. *Taylor*, 142 Wis. 2d at 38. The circuit court concluded that the State was not entitled to these historical treatment records on the grounds that they were confidential under WIS. STAT. § 51.30(4)(a) (1985–86). *Taylor*, 142 Wis. 2d at 38–39.

¶ 51. This court reversed, on the grounds that, when Taylor entered an NGI plea, his alleged mental condition became a defense to the criminal charges in the litigation over the validity of his NGI plea. *Id.* at 40–41. In doing so, he lost protection of the privilege as to communications relevant to the litigation arising from his NGI plea, and WIS. STAT. § 51.30(4)(a) "does not create a cloak of confidentiality independent of the privilege itself. Once the privilege is removed the confidentiality is also removed." *Id.* at 41.

¶ 52. There are at least two problems with the Tribune's reliance on *Taylor*, and more generally with application of the litigation exception to the records at issue here. The first involves the distinctly different step of the NGI process at issue in *Taylor* as compared with the step at issue in the instant case. The contested treatment records in *Taylor* reflected Taylor's mental status at the time he committed the crime, which Taylor placed at issue in entering an NGI plea. In contrast here the conditional release plan was created only after it was determined that Stanley was to be

690

conditionally released. The Tribune took the position at oral argument that a conditional release plan represents a kind of "verdict" on a petition for conditional release. This is incorrect. The "verdict" here, to use the Tribune's analogy, is the *prior* decision of the court, made pursuant to the detailed terms of WIS. STAT. § 971.17(4), as to whether there is "clear and convincing evidence that the person would pose a significant risk of bodily harm to himself or herself or to others or of serious property damage if conditionally released." Once a court determined that such evidence was not presented, the decision to release Stanley was made and the conditional release plan was prepared solely to address treatment and services to be provided upon his release.

¶ 53. A second problem with the Tribune's argument is that this court in *Taylor* addresses the right of the State, a party adverse to Taylor in that litigation, to obtain records relevant to the litigation, not the open-to-the-public status of any record. *See Taylor*, 142 Wis. 2d at 42 (addressing the "state's right to obtain nonprivileged relevant evidence held by third parties for presentation at trial"). *Taylor* does not address the right of the public to inspect treatment records. The question in the instant case is not whether the conditional release plan and other sealed records were withheld from the district attorney, the party adverse to Stanley in this criminal case; the record in this case reflects distribution of the conditional release plan and order of placement to a limited group of persons and entities involved in treatment and to the district attorney.

¶ 54. In a variation on its second argument, at oral argument the Tribune submitted that, as of the time of his NGI plea, "all" of Stanley's mental health records were "publicly accessible," and that, twenty-nine years later in petitioning for conditional release, Stanley again

691

publicly revealed details regarding his use of medications and his reactions to them. From these facts, the Tribune argues that we should conclude that Stanley waived his right to protection of a psychotherapist-patient privilege regarding the conditional release plan. However, this is not a well-developed argument. Even assuming, as the Tribune asserts, that "all" of Stanley's mental health records were "publicly accessible" as they existed almost thirty years ago and again at the time of the petition for conditional release, the Tribune fails to cite legal authority supporting the proposition that an NGI defendant, either at trial or during a proceeding seeking release, waives *future* protection afforded under Wis. Stat. § 51.30(4) against public disclosure of a treatment record. The Tribune does not discuss Wis. Stat. § 905.11 (waiver of privilege) in its briefs, nor does it address such precedent as *Johnson v. Rogers Memorial Hospital, Inc.*, 2005 WI 114, ¶ 52, 283 Wis. 2d 384, 700 N.W.2d 27 (disclosure in proceeding in which patient-litigant exception applies does not waive the privilege "where subsequent communication is itself privileged" (citing § 905.11)).

¶ 55. As the Tribune's arguments highlight, the legislature has drawn arguably fine lines in this area. On the one hand, it has given the circuit court the obligation of making a determination, which includes consideration of dangerousness, in an open, evidentiary hearing, on a petition for conditional release. This involves addressing factors that include:

> the person's mental history and present mental condition, where the person will live, how the person will support himself or herself, what arrangements are available to ensure that the person has access to and will take necessary medication, and what arrangements are [available] for treatment beyond medication.

692

WIS. STAT. § 971.17(4)(d). That occurred in this case. *See* ¶ 45 n.14, *supra*. On the other hand, when these same topics are addressed in a "treatment record" created for purposes of an ordered conditional release, as here, such records are to be kept confidential, at least with respect to the general public. However, it is for the legislature to draw such lines, and in any case, the concept of maintaining confidentiality of records that are referenced publicly at a court hearing is not unique to this context. *See, e.g.,* WIS. STAT. § 972.15(1) and (4) (authorizing circuit courts to order presentence investigation reports after a criminal conviction and establishing that such reports are confidential, even though they are created in part so that courts may refer to aspects of their contents in open court at the time of sentencing).

¶ 56. For these reasons, we conclude that WIS. STAT. § 905.04(4)(c), as incorporated into WIS. STAT. § 51.30(4)(a), does not operate here to remove the "cloak of confidentiality," as it did in *Taylor*. More generally, we conclude that, under the plain language of the relevant statutes, the conditional release plan is a "treatment record" that the court properly sealed as a confidential record. Therefore, it falls within the first *Bilder* exception to the requirement that court records are open for public inspection.

## The Order of Placement

██ ██

¶ 57. In contrast, we conclude that the order of placement is not a "treatment record" under the plain language of WIS. STAT. § 51.30(1)(b), except for the inclusion of the proposed new residential address for Stanley and a phone number for that address on the

order. As discussed above, treatment records are "created in the course of providing services to individuals for mental illness." The circuit court was not in any sense tasked with providing Stanley with a service that could be deemed treatment. If Stanley means to argue that the order of placement was created in the course of providing services, he would be mistaken.

¶ 58. It is possible that the circuit court believed that it was obligated to seal the order of placement because the order included a part of the conditional release plan, namely Stanley's placement address and corresponding phone number. We next discuss this information.

¶ 59. As explained above, the conditional release plan is a "treatment record." The address and phone number constitute a unit of information taken from the plan that relates to one form of treatment and services that Stanley is to receive, namely "residential services." *See* WIS. STAT. § 971.17(4)(e)1. (identifying "residential services" as a service to be described in a conditional release plan). Therefore, information bearing on "residential services," such as the placement address, is part of a "treatment record," and redaction of this information is necessary before the order of placement is made available for inspection by the Tribune. A court attempting to comply with the general rule of transparency for court records required under *Bilder*, as well as to comply with its exceptions, has authority to redact court records to release all information not excluded from release. *See, e.g., City of Madison v. Appeals Comm. of the Madison Human Servs. Comm'n*, 122 Wis. 2d 488, 490, 496–97, 361 N.W.2d 734 (Ct. App. 1984) (approving circuit court's "thorough" redaction, pursuant to a statute requiring confidentiality, of details regarding an applicant for gen-

eral relief in records otherwise required to be released); *see also Bilder*, 112 Wis. 2d at 557 ("an impoundment order is appropriate only when there is no less restrictive alternative available.").[17] For these reasons, we direct that, on remand, the circuit court shall cause the release to the Tribune of a copy of the original order of placement, but redacting the placement address information, including the phone number.

## II. COSTS AND FEES UNDER THE PUBLIC RECORDS LAW

¶ 60. We turn to the second issue presented in this appeal. The Tribune requests costs and fees from the

---

[17] The circuit court's approach in signing and entering an order that included the placement address and phone number is understandable insofar as the pre-printed order of placement form provides spaces to insert the placement address and phone number for a conditionally released person. However, it does not appear necessary for this form order to contain this information, which as we explain in the text describes "residential services" that are to be included in a conditional release plan. It is not obvious to us why the order approving this plan needs to repeat the address reflected in that plan or a corresponding phone number. In any case, the form order invites the awkward result, as here, of a court order reflecting treatment record information. We recommend that the Wisconsin Court Records Management Committee of the Office of the Wisconsin Director of State Courts consider revising this form.

Separately, regarding this address information, we infer from the record that Stanley may not currently reside at the address reflected on the initial order of placement, as opposed to the later approved conditional release plan update, but we see no reason to conclude that, if true, this fact would alter the "treatment record" character of this treatment plan information reflected on the order.

circuit court under Wis. Stat. § 19.37(2),[18] based on its position that the circuit court violated the public records law as an "authority" that "willfully ignored" three requests for records that the Tribune directed to the court.[19] This, the Tribune submits, constituted prohibited "delay" in responding to a written request.[20]

[18] Wisconsin Stat. § 19.37(2) provides in relevant part:

(2) Costs, fees, and damages. (a) Except as provided in this paragraph, the court shall award reasonable attorney fees, damages of not less than $100, and other actual costs to the requester if the requester prevails in whole or in substantial part in any action filed under sub. (1) relating to access to a record or part of a record under s. 19.35(1)(a) .... Costs and fees shall be paid by the authority affected or the unit of government of which it is a part, or by the unit of government by which the legal custodian under s. 19.33 is employed and may not become a personal liability of any public official.

(b) In any action filed under sub. (1) relating to access to a record or part of a record under s. 19.35(1)(am), if the court finds that the authority acted in a willful or intentional manner, the court shall award the individual actual damages sustained by the individual as a consequence of the failure.

There is ambiguity in the Tribune's characterization on appeal of its request, as to whether it is seeking all remedies available under § 19.37(2)(a) and (b), or only its costs and fees under § 19.37(2)(a). This ambiguity is irrelevant under our analysis of this issue.

[19] The Tribune also alleges that the court violated the public records law in withholding sealed records. Given our conclusion that no remedy under Wis. Stat. § 19.37 is available to the Tribune, we need not address the question of whether the court's withholding of the order of placement, which we conclude should have been released in part, could constitute an issue on which the Tribune has prevailed "in whole or in substantial part." *See* § 19.37(2). Therefore, for ease of reference in the text we refer only to the Tribune's claim that the court ignored its requests or "delay[ed]" in responding to them.

[20] Upon a request for a record, an authority must "as soon as practicable and without delay, either fill the request or notify

However, we conclude that the remedies in § 19.37 are available only to a party who has filed, or requested a district attorney or the attorney general to file, an original mandamus action. *See* § 19.37(1)(a) and (b). Without addressing any other aspect of any arguments submitted to us on this issue, we conclude that the remedies in § 19.37 are not available to the Tribune because it never filed, or requested the filing of, an original mandamus action.

¶ 61. The plain language of Wis. Stat. § 19.37 provides two apparently exclusive means by which to obtain the remedies available under § 19.37, namely a mandamus action brought directly by the requester under § 19.37(1)(a) or a mandamus action brought by a district attorney or the attorney general at the written request of the requester under § 19.37(1)(b). A statement and reasoning in two prior opinions of this court support an interpretation of § 19.37 under which its remedies are limited to cases in which a requester uses one of these options. *See The Capital Times Co. v. Doyle*, 2011 WI App 137, ¶ 6, 337 Wis. 2d 544, 807 N.W.2d 666 (a § 19.37(1) mandamus action is the "exclusive means by which requesters may obtain punitive damages under § 19.37(3)"); *State v. Zien*, 2008 WI App 153, ¶¶ 23, 34–36, 314 Wis. 2d 340, 761 N.W.2d 15 ("The plain language of Wis. Stat. § 19.37(1) dictates distinct courses of action, and prescribes different remedies for each course.").

---

the requester of the authority's determination to deny the request in whole or in part and the reasons therefor." Wis. Stat. § 19.35(4). A mandamus action is authorized when an authority "delays granting access to a record or part of a record after a written request for disclosure is made." Wis. Stat. § 19.37(1). An authority or custodian who "arbitrarily and capriciously" delays response to a request may be required to forfeit not more than $1,000. § 19.37(4).

¶ 62. The Tribune's petitions to this court, filed under Wis. Stat. Rule 809.51, for supervisory writs were not original mandamus actions filed under Wis. Stat. § 19.37(1)(a) or (b). They were requests that this court exercise its supervisory authority over a criminal commitment case. *See* Wis. Const. art. VII, § 5(3) (court of appeals "shall have supervisory authority over all actions and proceedings in the courts in the district"); Wis. Stat. § 752.02; *State ex rel. Journal/Sentinel, Inc. v. Jennings*, 141 Wis. 2d 618, 620–21, 415 N.W.2d 518 (1987) (court of appeals may exercise supervisory jurisdiction over circuit court to compel judge of that court to permit inspection of a settlement on file in a civil action in that court). If this court had granted any of these petitions, it would have been exercising *supervisory* authority over a criminal commitment proceeding, not entertaining an original mandamus action under § 19.37(1). *Cf. State ex rel. Swan v. Elections Bd.*, 133 Wis. 2d 87, 91, 97, 394 N.W.2d 732 (1986) (court of appeals lacks *original* jurisdiction to issue writ of mandamus against state agency).

¶ 63. The Tribune points to the fact that, under *Eau Claire Leader-Telegram v. Barrett*, 146 Wis. 2d 647, 650–51, 431 N.W.2d 741 (Ct. App. 1988), the Tribune was precluded from pursuing an original mandamus action against the circuit court in a different circuit court because a circuit court lacks jurisdiction to exercise supervisory power over another circuit court. However, this obstacle does not change the requirements of Wis. Stat. § 19.37 under its plain language, and as described in *Capital Times* and *Zien*. These are statutory remedies. The legislature directs when they are available.

¶ 64. As in *Eau Claire Leader-Telegram*, the facts and issues before us do not provide a vehicle for

determining whether there is a different avenue for recovering costs and fees under WIS. STAT. § 19.37(2) in circumstances in which a court of law is alleged to be the authority for records withheld from public inspection. *See Eau Claire Leader-Telegram*, 146 Wis. 2d at 651 ("We note that because of the restricted issue on appeal, we do not address the issue of where proper jurisdiction lies or the correct procedure for recovering costs and fees under the particular facts of this case."). The only specific question before us in this appeal, which was also raised by the supervisory writ actions, is whether we may order the circuit court to pay costs and fees under § 19.37(2) when there has not been a mandamus action filed under § 19.37(1)(a) or (b). As we have explained, the statute does not permit this.

## CONCLUSION

¶ 65. For these reasons, we affirm the circuit court's order to the extent it left under seal the March 26, 2009 conditional release plan, the March 27, 2009 notification letter, the November 12, 2009 conditional release plan update, and the portion of the March 31, 2009 order of placement reflecting Stanley's placement address and corresponding phone number. We reverse and remand with directions that the circuit court shall cause release to the Tribune of a copy of the original order of placement of March 31, 2009, but with the address and phone number redacted. The Tribune's request for fees and costs pursuant to WIS. STAT. § 19.37(2) is denied.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.