STATE EX REL. ALTHOUSE, and another, Appellants, v. CITY OF MADISON, and others, Respondents.

*No. 76–158. Submitted on briefs May 4, 1977.— Decided July 1, 1977.*
(Also reported in 255 N. W. 2d 449.)

98

For the appellants the cause was submitted on the briefs of *Mark A. Frankel* and *Frankel, Langhammer & Pines*, attorneys, and *Arlen Christenson, David E. Lasker* and *Michael Christopher*, of counsel, all of Madison.

For the respondents the cause was submitted on the brief of *Henry A. Gempeler*, city attorney, and *Larry W. O'Brien*, deputy city attorney.

Brief amicus curiae was filed by *James F. Spohn* and *Michael, Best & Friedrick* of Madison; and *Theodore C. Widder, III* and *MacDonald & Widder* of Madison, of counsel, on behalf of the Madison Housing Council, Inc.

Brief amicus curiae was filed by *William H. Lynch* of Milwaukee on behalf of Wisconsin Civil Liberties Union Foundation, Inc.

HEFFERNAN, J. This case poses the question of whether a city council can be compelled by mandamus to place on the ballot a referendum question for the adoption of an ordinance initiated in proper form in accordance with sec. 9.20 (1), Stats., but which ordinance the common council, on the advice of the city attorney, has concluded is in violation of state statutes and is unconstitutional. We conclude that mandamus is appropriate under such circumstances, and we hold that the trial court erred when it denied the petition for a writ of mandamus. Accordingly, we reverse.

On January 20, 1976, a petition signed by over 8,500 electors of the City of Madison was filed with the city clerk. Attached to that petition was a document entitled, "Fair Rent Ordinance," which the petitioners sought to have enacted pursuant to sec. 9.20, Stats. It is agreed that the petition and the attached ordinance were in conformity with the requirements of Wisconsin's direct legislation statutes. Sec. 9.20 (1) provides:

"9.20 Direct legislation. (1) A number of electors equal to at least 15% of the votes cast for governor at the last general election in their city may sign and file a petition with the city clerk requesting that an attached proposed ordinance or resolution, without alteration, either be adopted by the common council or referred to a vote of the electors. The person filing the petition shall designate in writing a person or organization to be notified of any insufficiency or improper form under sub. (3)."

After the city clerk concluded that the petition was in formal compliance with the statutes, on January 27, 1976, he certified the petition and forwarded it to the common council of the City of Madison pursuant to sec. 9.20 (3), Stats. That subsection provides:

"(3) Within 15 days after the petition is filed, the city clerk shall determine by careful examination

whether the petition is sufficient and whether the proposed ordinance or resolution is in proper form. He shall state his findings in a signed and dated certificate attached to the petition. If the petition is found to be insufficient or the proposed ordinance or resolution is not in proper form, the certificate shall give the particulars, stating the insufficiency or improper form. The petition may be amended to correct any insufficiency or the proposed ordinance or resolution may be put in proper form within 10 days following the affixing of the original certificate and notification of the person designated under sub. (1). When the original or amended petition is found to be sufficient and the original or amended ordinance or resolution is in proper form, the city clerk shall so state on the attached certificate and forward it to the common council immediately."

The common council failed, however, to act upon the ordinance, as required in sec. 9.20(4), Stats. That subsection provides:

"(4) The common council shall, without alteration, either pass the ordinance or resolution within 30 days following the date of the clerk's final certificate, or submit it to the electors at the next spring or general election, if the election is more than 6 weeks after the date the order is given. If 6 weeks or less before election the ordinance or resolution shall be voted on at the next election thereafter. The council by a three-fourths vote of the members-elect may order a special election for the purpose at any time prior to the next election, but not more than one special election for direct legislation shall be called in any 6-months period."

Finally, on September 7, 1976, almost nine months later, the council adopted a resolution removing the proposed ordinance from the ballot. This action was apparently pursuant to the advice of the city attorney that the ordinance, if passed, would be unconstitutional.

On September 10, 1976, the petitioners, the proponents of the ordinance, asked for leave to commence an action for mandamus to compel the common council to place the

ordinance on the ballot. The petitioners alleged that, in refusing to either enact the ordinance or to place it on the ballot, the common council had failed to perform a mandatory ministerial duty prescribed under sec. 9.20 (4), Stats., *supra,* and that in so doing it had usurped the function of the courts by making a judicial determination on the validity or constitutionality of the proposed direct legislation.

On the return to the alternative writ, the common council alleged:

"[It had] an affirmative duty and an obligation to scrutinize all proposals presented to it and neither to enact nor put to popular vote those proposals which it believes to be clearly invalid; this duty and obligation takes precedence over the procedure described in Sec. 9.20, Wis. Stats., which assumes inherently, that proposals submitted thereunder are constitutionally valid."

At the hearing on the return to the alternative writ, the parties stated what they believed to be the issue presented to the court. The attorney for the petitioners stated:

"The threshold question is whether the Court at this point in time, at this stage in the development of this particular legislation, has authority or standing to delve into the merits of the constitutionality [of the ordinance]."

The city attorney stated his version of the issue:

"The threshold question of this thing is still whether or not the council must by mandamus be compelled to put what is at least very arguably a strongly unconstitutional proposition [on the ballot] . . . ."

The trial judge, in substance, adopted the city attorney's framing of the issue. He stated that he would treat the matter as though it were on demurrer and on the assumption that the ordinance was, in some respects at least, invalid. He said:

"Assuming the proposed rent control ordinance is either unconstitutional or legally invalid because it conflicts with the state statutes, must the Court nonetheless issue a peremptory Writ of Mandamus to compel the common council and the city clerk to place the ordinance on the November ballot?"

We conclude that this was an erroneous framing of the question, for, as we shall discuss further, it is not the prerogative of the common council to reach a conclusion with respect to the unconstitutionality or invalidity of the proposed ordinance. It was error for the trial judge to assume the unconstitutionality of the ordinance. The question, rather, was whether the common council or the trial judge had at this stage of the proceedings the prerogative to inquire at all into the constitutionality of the ordinance.

We conclude the only inquiries permissible by either the council or the trial judge at the mandamus hearing were in respect to whether the ordinance was legislative in nature, whether it proposed new legislation and not the repeal of existing legislation, and whether it was proper in form. Moreover, we conclude that, under the circumstances which underlay the consideration of this attempt at direct legislation, mandamus would lie even though it might have been quite clear to the trial judge that the ordinance, if enacted, would be unconstitutional.

Putting aside for a moment the special questions which arise in the context of the direct legislation statute, we consider the accepted standards that are appropriate for the guidance of a court in mandamus actions.

In the recent case of *Rawhouser v. CESA No. 4*, 75 Wis.2d 52, 61, 248 N.W.2d 442 (1977), we said:

"Mandamus is a summary, drastic and extraordinary writ issued in the sound discretion of the court. Although classed as a legal remedy, mandamus is equitable in nature. Its issuance is generally controlled by equitable prin-

ciples. It may issue when no other adequate remedy exists. Also, the rights of the public and third persons may be considered. *State ex rel. Sullivan v. Hauerwas*, 254 Wis. 336, 36 N.W.2d 427 (1949) ; *State ex rel. Joyce v. Farr*, 236 Wis. 323, 295 N.W. 21 (1940)."

There are, however, additional strictures on the issuance of the writ. It will lie only where the petitioner has a clear specific legal right to the action he seeks to compel. *Wisconsin Area Health & Welfare Fund v. Hon. Walter H. Cate*, 71 Wis.2d 375, 238 N.W.2d 107 (1976). Where, however, the right is positive, plain, and unequivocal, mandamus is appropriate. *Milwaukee County v. Schmidt*, 52 Wis.2d 58, 187 N.W.2d 777 (1971). But when the action sought to be compelled is discretionary, mandamus will not lie. However, mandamus is appropriate to compel the exercise of discretion. *State ex rel. Coffey v. Chittenden*, 112 Wis. 569, 88 N.W. 587 (1902).

Nevertheless, the fact that the duty imposed involves the construction of a statute does not mean that the obligation set forth in the statute may not be compelled by mandamus.

We said in *Walter Laev, Inc. v. Karns*, 40 Wis.2d 114, 120, 161 N.W.2d 227 (1968) :

" 'If the law direct him to perform an act in regard to which no discretion is committed to him, and which, upon the facts existing, he is bound to perform, then that act is ministerial, although depending upon a statute which requires, in some degree, a construction of its language . . . .' "

As pointed out in *CESA No. 4, supra,* the issuance of the writ lies within the sound discretion of the court. The exercise of discretion on an erroneous view of the law, however, constitutes an abuse of discretion. *State v. Hutnik*, 39 Wis.2d 754, 159 N.W.2d 733 (1968).

Applying these standards, it is apparent that the common council's duty, as set forth in sec. 9.20(4), Stats., is unequivocally of a mandatory, ministerial, nondiscretionary nature. That section gives the council only the alternative of passing the ordinance within thirty days after the clerk's certification or of submitting it to the electors at the next election. The duty on its face is positive, plain, and unequivocal. The petitioner, under the statute, has a clear and specific legal right to have the ordinance either passed or placed on the ballot.

Yet this court has carved out certain exceptions which indicate that, under some circumstances, the council may properly refuse to accept either of the statutory choices and may instead reject both of them.

Implicit in the direct legislation statute, sec. 9.20, Stats., is the requirement that the ordinance or statute sought to be passed is legislative in character. In *Heider v. City of Wauwatosa*, 37 Wis.2d 466, 474, 155 N.W.2d 17 (1967), we stated:

" 'Initiative powers, under sec. 10.43 [now 9.20], Wis. Stats., relates solely to those matters which are legislative in character and do not extend to executive or administrative actions of local legislative bodies. Where it is administrative in character, it is outside of the scope of initiative action and in such instances it becomes a matter of judicial disposition to determine whether or not the actions of the electorate under sec. 10.43, Wis. Stats., are proper under the existing circumstances.' "

In addition, the court in *Heider,* relying upon the earlier case of *Landt v. Wisconsin Dells,* 30 Wis.2d 470, 141 N.W.2d 245 (1966), pointed out that direct legislation was not appropriate to compel the council to repeal existing ordinances or resolutions or to compel the passage of an ordinance which is in clear conflict with a prior ordinance and which would constitute an implied repealer of that ordinance.

In summary of these restrictions, it would appear that, in initiative proceedings, the city electors may only exercise such powers as are conferred upon the common council of the city by the statute or by the constitution. That power of direct legislation is restricted to legislative-type actions and is not applicable to executive or administrative actions. Moreover, the legislative power conferred upon the electors cannot be used to amend or repeal existing legislation properly enacted. In addition, it has been held that direct legislation, even though within the ambit of the council's power, must be exercised under the same time schedules which bind the council, *e.g.*, direct legislation to change the salaries of city officers is not appropriate when brought at a time when it was too late for the council itself to act. *Feavel v. City of Appleton*, 234 Wis. 483, 291 N.W. 830 (1940).

Moreover, if the statute prescribes set procedures, *e.g.*, the acquisition of a utility, the electors may not initiate legislation which will modify those statutorily prescribed procedures which bind the council itself in respect to the limitations which the Wisconsin courts have placed upon direct legislation. *See*, Conrad, *Direct City Legislation on Foreign Policy Matters*, 51 Marq. L. Rev. 426 (1968).

It is clear that none of the limitations which this court has heretofore placed upon the right of citizens for direct legislation under sec. 9.20, Stats., is pertinent to the facts before us now.

The ordinance proposed is legislative in nature; it does not expressly or impliedly repeal any existing city ordinance; it usurps no function heretofore allocated to an administrative agency; and there is nothing to show that it directly contravenes any statutory or procedural regulations that would bind the common council were it to enact the legislation.

Hence, under existing law, because none of the previously announced limitations apply and the statutory duty upon the council is explicit and ministerial in nature, we could easily, on the basis of past precedent, conclude that mandamus was appropriate. However, a new question, not previously decided in Wisconsin, is posed by these proceedings: Whether the council has the discretion to refuse to enact or place on the ballot a proposed initiated ordinance on the ground that it appears to the council to be arguably invalid or unconstitutional.

The trial judge relied upon *Heider, supra,* and concluded that that case gave the council exactly that discretion. *Heider,* however, merely posed the question. It did not answer it. *Heider* queried at 472:

"Must a court issue a writ of mandamus to compel the common council to submit an initiative resolution to the electorate regardless of the validity of the resolution?"

The validity, however, of the resolution in *Heider* had nothing whatsoever to do with the question posed herein. The question there and the one to which the court's proposition was addressed was whether an administrative procedure, not properly within the scope of the common council's legislative powers, could be enacted by the direct legislation process. The answer was in the negative. But *Heider* did not make a determination beyond that. It is true that, in its discussion of *State ex rel. Sullivan v. Hauerwas,* 254 Wis. 336, 36 N.W.2d 427 (1949), it pointed out that it would have been proper to deny a petition for a writ of mandamus to place a candidate of doubtful age eligibility on the ballot had that question been previously decided adversely to the petitioner; but it also recognized that, where no prior adjudication had taken place, mandamus was appropriate even though a substantial constitutional doubt was readily apparent. The holding of *Heider* was simply that "administrative measures may not be the subject of initiative." (at 482) *Heider* is not authority for the proposition urged by the city; and, to the extent that

*Heider* relied upon the reasoning of *Sullivan,* it supports the petitioner's position that a proposition of unresolved constitutionality must be placed on the ballot even though its constitutionality is in substantial doubt.

The brief of the petitioners on this appeal attacks the authority of the common council to impinge upon the judiciary's right to make a determination of constitutionality and upon the mandamus court's right to invade the legislative sphere in determining what shall be compelled to be placed before the people in a referendum election.

It seems clear that, under the peremptory statutory provisions of sec. 9.20, Stats., the common council has no authority whatsoever, in respect to direct legislation, to make an initial judgment of the constitutionality or validity of the proposed legislation. That limitation of authority is, of course, conditioned on the council's right to exercise discretion where the unconstitutionality is clear from prior adjudications on the same subject matter, *e.g., Sullivan, supra;* or where the measure is of a nature to put it beyond the pale of the authority of the council itself, *e.g., Heider;* or where the direct legislation seeks to impliedly or expressly repeal existing ordinances or resolutions, *e.g., Landt, supra.*

To assume the unconstitutionality of the statute is to beg the question. The question is whether either the council or the mandamus court, subject to the limitations set forth above, has any right whatsoever to inquire into the constitutionality of proposed legislation. In general, of course, where a city council itself initiates an ordinance, it may refuse to adopt it because of its doubtful constitutionality. That is quite different, however, from the situation where its duties are peremptorily mandated by the direct legislation statute.

The general rule in respect to courts prohibits advisory declarations of validity prior to the enactment and

attempted enforcement of a legislative measure. This general rule is stated in 5 McQuillin, *Municipal Corporations* (3rd ed.), sec. 19.04, p. 407:

"Sec. 19.04. When court will pass on constitutionality
"A court will pass upon the constitutionality of an ordinance only where it is necessary for it to do so; a court will not pass upon the constitutionality of an ordinance where it is not in issue; and a court will consider the constitutionality of an ordinance only to the extent necessary to the protection of the rights of the parties concerned. A court has no authority to pronounce an opinion on whether a proposed law will conflict with the constitution. Accordingly, it is a general rule that an ordinance or act will not be passed upon as to its constitutionality before its adoption."

On the other hand, McQuillin recognizes, sec. 16.54, p. 210, that:

"[O]rdinances or measures that are unconstitutional or void or beyond the power or the authority of a municipality to enact, are not subject to initiative or referendum."

Nevertheless, he recognizes, sec. 16.69, pp. 252–53, that:

"There is some difference of view as to whether or not a court will pass upon the constitutionality or validity of an initiative or referendum measure before its submission to the people. On the one hand, the general rule that an ordinance or act will not be passed upon as to its constitutionality or validity before its adoption, has been applied to initiative measures. . . .
"On the other hand, it has been ruled that, in a proceeding to compel submission to the electors, in accordance with initiative procedure, a court will look into the question whether, if approved by the voters, the measure would be valid and constitutional."

There is, then, a line of cases that would support the trial judge's position that the mandamus court may inquire into the potential invalidity or unconstitutionality

of the proposed legislation. *Otey v. Common Council of the City of Milwaukee*, 281 F. Supp. 264 (E.D. Wis., 1968); *State ex rel. Cranfill v. Smith*, 330 Mo. 252, 48 S.W.2d 891 (1932); *State ex rel. Asotsky v. Regan*, 317 Mo. 1216, 298 S.W. 747 (1927).

We believe, however, that the general tenor of the Wisconsin law is contrary to those cases. We have already referred to *Sullivan*, in which this court held that, although a question (not involving direct legislation) of substantial constitutionality of the proposed action is raised, mandamus will lie unless there has been a prior and explicit adjudication of unconstitutionality on the very subject matter. In other words, where the unconstitutionality is arguable and open to debate, mandamus will nevertheless lie to compel performance. In *State ex rel. Martin v. Zimmerman*, 233 Wis. 16, 288 N.W. 454 (1939), the secretary of state refused to publish a bill because of his belief in its unconstitutionality. This court rejected his defense and stated:

"It is a thoroughly well-established principle of law that no person may raise the constitutionality of an act of the legislature who is not in his official capacity or personally affected by it." (at 23)

The court pointed out that the question of the validity of the act could not be entertained by any court prior to its enactment. It stated:

"When the act is published, and the interest of some officer or citizen is adversely affected by the act, that question may be presented in a proper case." (at 24)

In *Goodland v. Zimmerman*, 243 Wis. 459, 10 N.W.2d 180 (1943), the governor of the state sought to enjoin the publication of an act because he believed it was unconstitutional. The court dismissed the governor's action and stated:

"We are here dealing with a bill which has not yet become a law. There is no such thing known to the law as an unconstitutional bill. A court cannot deal with the question of constitutionality until a law has been duly enacted and some person has been deprived of his constitutional rights by its operation. In a proper case a court may declare whether the legislature has exceeded its constitutional powers in the enactment of the law complained of. It is a rule of universal application that no one but a person injured can question the constitutionality of a law." (at 466)

The court reasoned that to pass on the constitutionality of a bill would violate the doctrine of separation of powers:

"It must always be remembered that one of the fundamental principles of the American constitutional system is that governmental powers are divided among the three departments of government, the legislative, the executive, and judicial, and that each of these departments is separate and independent from the others except as otherwise provided by the constitution. The application of these principles operates in a general way to confine legislative powers to the legislature, executive powers to the executive department, and those which are judicial in character to the judiciary." (at 466-67)

If a court could enjoin publication of a bill, the court reasoned, it, not the legislature, would be determining what the law should be and said:

". . . no court has jurisdiction to enjoin the legislative process at any point. . . .
"When the legislative process has been completed, a court may then in a proper case consider whether the power of the legislature has been constitutionally exercised or whether the law enacted in the exercise of its power is valid. This is fundamental law. So far as we are advised, or able to ascertain, no court has heretofore attempted to interfere with the right of the legislature to enact and put in force a law." (at 468-69)

This rationale, which is firmly implanted in Wisconsin law, is the foundation of cases from other jurisdictions which hold that the mandatory duties of a city clerk and council must be performed despite substantial doubts of constitutionality.

The State of Oregon, whose history of direct legislation is analogous to that of Wisconsin, supplies persuasive precedent in respect to the case before us. In *Johnson v. City of Astoria*, 227 Ore. 586, 363 P.2d 571 (1961), a writ of mandamus was brought to compel the city clerk to place initiated legislation on the ballot. He had refused on the grounds he believed the proposed legislation was clearly unconstitutional. The court dismissed this defense and relied upon the proposition, well established in Oregon law, that:

"[A]n official will not be enjoined from submitting an initiative measure to the voters simply because the measure may be unconstitutional and . . . the courts of this state have no power to determine the question of constitutionality of a measure before its enactment into law." (at 591)

The court also relied upon *State ex rel. Carson v. Kozer*, 126 Ore. 641, 270 P. 513 (1928), which held:

" 'If the measure is unconstitutional and should be adopted, the Constitution itself will require the courts, if the question is properly presented, to pronounce the measure to be unconstitutional, but the courts possess no such power as to any proposed bill before the same has become a law and neither the executive department of the state nor the judicial department has authority to say to either of the legislative branches of the state, "The law you are proposing to enact is unconstitutional and because it is unconstitutional you cannot determine for yourself whether the same shall be enacted into law or not." These principles, it seems to us, are so fundamental and their application to the instant case so clear as to require no citation of authorities for their support.' (126 Ore., at 649)." (*Johnson*, at 591–92)

The Colorado court in *City of Rocky Ford v. Brown*, 133 Colo. 262, 293 P.2d 974 (1956), held that mandamus was appropriate to enforce the council's duty to place initiated legislation on the ballot, even though such action had been refused on the advice of the city attorney that it would be unconstitutional and contrary to state laws. The Colorado court stated:

"No discretion rests with administrative officials to pass upon the validity of an act proposed by the people. The people in the exercise of their right to vote upon such proposal, wisely adopt or reject it. If they express their sanction and approval of the ordinance by their vote, and its enforcement is attempted by one whose rights are affected, then the courts are open to pass upon the question of its validity. In the first instance the proposed ordinance is clothed with the presumption of validity and its constitutionality will not be considered by the courts by means of a hypothetical question, but only after enactment." (at 265–06)

Under statutes substantially identical with the direct legislation statutes of Wisconsin, the Supreme Court of California has consistently followed the rule that court interference by either injunction or mandamus would impinge upon the legislative power reserved to the people by direct legislation measures. In *Blotter v. Farrell*, 42 Cal.2d 804, 270 P.2d 481 (1954), the court relied upon an earlier case, *Ley v. Dominquez*, 212 Cal. 587, 593, 299 P. 713 (1931). It stated at 809:

" 'It is well settled that the power of initiative and referendum, as exercised in this state, is the exercise by the people of a power *reserved* to them, and not the exercise of a power *granted* to them. . . . [Citations.] For that reason, and in order to protect the people of this state in the exercise of this reserved legislative power, statutory or charter provision dealing with the referendum should be afforded the same liberal construction afforded election statutes generally.' "

The court found that, under a direct legislation statute materially identical to ours:

"[T]he city council was under a duty to either pass the proposed ordinance immediately or to call a special election for that purpose. Where a city council refuses to discharge its duty and fix a proper time for the election, it may be compelled to do so by mandamus." (at 812–13)

In 1967, the California Supreme Court was asked to compel the registrar of voters to place upon the ballot an initiative petition urging the withdrawal of American troops from Vietnam. Chief Justice Roger Traynor, writing for the court in *Farley v. Healey,* 67 Cal.2d 325, 62 Cal. Rptr. 26, 431 P.2d 650 (1967), held that such action was to be compelled even though there was substantial evidence that the measure was unconstitutional and beyond the powers of the electorate.

These cases, if followed by this court, would clearly require that the writ of mandamus be issued to compel the fair rent ordinance placed upon the ballot irrespective of arguable unconstitutionality. The underlying rationale of these cases is in accord with the Wisconsin cases discussed above, which consider it beyond the judicial power to inquire into the constitutionality of legislation until such legislation has been enacted and the controversy in respect thereto is ripe for adjudication.

It is apparent that these cases, which adopt a position of judicial restraint in respect to interference in the legislative process, are irreconcilable with those cases which permit a court's intervention for the purpose of pre-passage nullification on grounds of unconstitutionality.

In *Otey v. Common Council of the City of Milwaukee, supra,* the United States district judge held that a common council was not required under sec. 9.20, Stats., to enact a restricted housing ordinance, because it would be

contrary to the Fourteenth Amendment of the Constitution of the United States. The judge in *Otey* reasoned that, because the measure was patently unconstitutional, it would not compel the council to perform the futile act of submitting the measure to the voters.

The position of the district court in *Otey* was challenged and departed from in *Ranjel v. City of Lansing,* 417 F.2d 321 (6th Cir. 1969). It compared the holding in *Otey* with that of the California Supreme Court in *Mulkey v. Reitman,* 64 Cal.2d 529, 50 Cal. Rptr. 881, 413 P.2d 825 (1966), affirmed in *Reitman v. Mulkey,* 387 U.S. 369 (1967). In *Mulkey,* the California Supreme Court struck down a closed housing provision enacted, by initiative, into the California Constitution. However, the *Mulkey* court noted that, prior to enactment, in *Lewis v. Jordan,* Sec. 7549 (June 3, 1964) it had rejected a petition for mandamus to keep the provision off the ballot on grounds that it was patently unconstitutional. The *Mulkey* court noted that it had rejected the petition prior to enactment on the grounds:

" '[T]hat it would be more appropriate to pass on those questions after the election . . . than to interfere with the power of the people to propose laws and amendments to the Constitution and to adopt or reject the same at the polls. . . .' But we further noted in the order [denying the petition for the writ of mandamus] that 'there are grave questions whether the proposed amendment to the California Constitution is valid under the Fourteenth Amendment to the United States Constitution. . . .' " *Mulkey,* at 535.

Consistent with Wisconsin law, we agree with the rationale of the Sixth Circuit in *Ranjel* and the rationale expressed by the Supreme Courts of Oregon, Colorado, and California. We conclude that, where there has been no specific prior adjudication of unconstitutionality, the electorate under the direct legislation statutes, may compel placement on the ballot regardless of grave doubts in

respect to constitutionality and statutory validity. Only after the measure has passed and a controversy arises may a court of this state pass upon the question of constitutionality. While it is asserted that Wisconsin is a jurisdiction which limits the scope of direct legislation, our examination of the Wisconsin cases convinces us that Wisconsin law permits the electors under the direct legislation statute to compel a common council to enact or to place on the ballot any proposed ordinance which the common council in its legislative capacity could enact. It is apparent that, irrespective of the constitutionality of the proposed fair rent ordinance, it is a legislative measure, which the common council of the City of Madison could have, as an original matter, enacted.

We conclude also that the trial judge's reliance upon statements in *Heider,* without relating them to the specific holding in *Heider*—the validity of a proposed administrative rather than a legislative measure—was an error of law, and as such constituted an abuse of discretion. It was beyond the power of the court to assume or make a determination of constitutionality when the legislation had not been enacted and no controversy had arisen under it. This also constituted an abuse of discretion of the trial judge's power.

As was stated in *Goodland v. Zimmerman, supra,* at 466, "There is no such thing known to the law as an unconstitutional bill."

We should also emphasize that the intervention of the common council at this juncture of the direct legislation process not only flies in the face of the mandatory provisions of sec. 9.20, Stats., but also would almost totally vitiate the policy behind the direct legislation statutes. Sec. 9.20 implements the legislative powers that have been reserved to the people. Those reserved legislative

powers are exercised with particular appropriateness under circumstances where the people are of the opinion that their elected representatives are not acting in response to the public will. What we have in this case is the interjection of the very subjective determination of the Madison Common Council that the law ought not be passed because it would be unconstitutional. It was not its duty or responsibility to do so. Moreover, it is not our duty, nor is it within our jurisdiction, at this point to determine the constitutionality, but we should point out that different attorneys general of the State of Wisconsin have come to different conclusions in respect to the constitutionality of the type of ordinance with which the initiated legislation is concerned. See 39 O.A.G. 407 (1950) and 62 O.A.G. 276 (1973). We express no opinion in respect to the correctness of either of these opinions. However, it seems clear that a city council is in no position, either by virtue of its function or by virtue of its constitutional powers, to forestall proposed legislation on the basis of its unauthoritative conclusion in respect to constitutionality. It should, additionally, be pointed out that, although more than 8,000 petitioners have urged the passage of this legislation, it cannot become law unless approved by the majority of all the electors. The question of whether the proposed ordinance will become the law is hypothetical. It will be time enough to determine constitutionality if and when the ordinance is enacted and if and when a justiciable controversy arises which will make it possible for a court to determine its validity under the laws of Wisconsin.

*By the Court.*—Order reversed and cause remanded with directions to the circuit court to enter the peremptory writ of mandamus to compel the common council to place the proposed ordinance on the ballot for approval or rejection at the next election as provided by the statutes.