# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2022AP720

†Petition for Review Filed

Complete Title of Case:

**STATE OF WISCONSIN EX REL. JEFFREY MEESSMANN, ROBERT BAROFSKY, EDWARD BRODSKY, JEFFREY BURKE, SUE DRUM, ANN MAWICKE, GARY PLOUFF AND DAVID VOGT,**

    **PETITIONERS-APPELLANTS,†**

**RONIE JACOBSEN,**

    **PETITIONER,**

    **V.**

**TOWN OF PRESQUE ISLE,**

    **RESPONDENT-RESPONDENT.**

| | |
|---|---|
| Opinion Filed: | June 20, 2023 |
| Submitted on Briefs: | February 2, 2023 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Gill, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the petitioners-appellants, the cause was submitted on the briefs of *James A. Olson* of *Lawton & Cates, S.C.*, Madison, *Christopher J. Blythe*, Madison, and *Daniel P. Bach* of *Lawton & Cates, S.C.*, Jefferson. |

Respondent
ATTORNEYS:       On behalf of the respondent-respondent, the cause was submitted on
                 the brief of *Steven C. Garbowicz* of *O'Brien, Anderson, Burgy &
                 Garbowicz, L.L.P.*, Eagle River.

**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**June 20, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal No.  2022AP720** | Cir. Ct. No. 2021CV100 |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS** |

---

STATE OF WISCONSIN EX REL. JEFFREY MEESSMANN, ROBERT BAROFSKY, EDWARD BRODSKY, JEFFREY BURKE, SUE DRUM, ANN MAWICKE, GARY PLOUFF AND DAVID VOGT,

    PETITIONERS-APPELLANTS,

RONIE JACOBSEN,

    PETITIONER,

  V.

TOWN OF PRESQUE ISLE,

    RESPONDENT-RESPONDENT.

---

APPEAL from an order of the circuit court for Vilas County: MARTHA MILANOWSKI, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1     STARK, P.J.  This is a mandamus action to compel the Town of Presque Isle, Wisconsin (the Town), to act on a petition filed under WIS. STAT. § 9.20 (2021-22),[1] the direct legislation statute.  The petitioners-appellants in this case are adult residents and electors of the Town.[2]

¶2     In 2021, the Residents brought to the Town Board (the Board) their concerns that hazardous boat wakes[3] created on the Town's waterways were interfering with their rights under the Public Trust Doctrine.[4]  However, after investigation and consideration of a proposed boating ordinance, the Board took no action.[5]

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] Multiple residents filed the action in this case.  For ease of reading, when referencing the petitioners-appellants' arguments, we will refer to them as "the Residents."

[3] The record defines a hazardous wake as "a boat wake that is intentionally magnified through the use of ballast, design features or operational procedures to amplify the wake's height and consequently generate rogue waves."

[4] For a discussion of the scope of the Public Trust Doctrine, see our supreme court's decision in *Clean Wisconsin, Inc. v. DNR*, 2021 WI 72, 398 Wis. 2d 433, 961 N.W.2d 611.

[5] In their petition for a writ of mandamus, the Residents alleged that they first brought their concerns to the Board.  On June 6, 2020, the Board requested that the Town Ordinance Committee "do research and make recommendations concerning hazardous wakes."  The Town Ordinance Committee held several meetings and produced and adopted a condition report.  The report outlines numerous impacts on the public health, safety, and welfare as a result of hazardous wakes.

The report and a proposed ordinance were then submitted to the Board.  According to the Residents' petition for a writ of mandamus, the proposed ordinance targeted the "operation of a boat in a manner that intentionally magnifies its wake for recreational purposes such as wake boarding, wake surfing, or wake jumping," but it did not "prohibit the use of watercrafts that are not intentionally magnifying the wake, such as water ski boats, personal watercraft, or boats designed for wake sports."  On February 3, 2021, the Board was threatened with litigation by wake boaters if the ordinance was adopted.  Thereafter, the Board took no action on the proposed ordinance.

¶3      The Residents then sought to employ the provisions of the direct legislation statute—WIS. STAT. § 9.20—to force the Board to take action. The Residents submitted a petition and the proposed ordinance to the Town, requesting that the Town either adopt the proposed ordinance or submit it to a vote by the electors. The Town did not act upon the petition, and it argues that it was not required to do so because § 9.20 is not applicable to towns. In contrast, the Residents argue that § 9.20 is applicable to the Town based on its adoption of village powers under WIS. STAT. §§ 60.10(2)(c) and 60.22(3) and pursuant to WIS. STAT. § 61.342. After the Town refused to act on the Residents' petition, the Residents sought a writ of mandamus in the circuit court. The court agreed with the Town and denied the Residents' petition for a writ of mandamus.

¶4      We conclude that the circuit court properly denied the Residents' petition for a writ of mandamus. This case does not concern the validity of the proposed ordinance; instead, the question is whether WIS. STAT. § 9.20 places a positive and plain duty on the Town to take action on the Residents' petition. Given the plain language of the relevant statutes, we conclude that § 9.20 does not assign such a duty, as that statute is not applicable to towns. None of the statutes upon which the Residents rely give them the authority to petition the Town for direct legislation, and the Town had no duty to act upon the Residents' petition, even though the Town has adopted village powers under WIS. STAT. §§ 60.10(2)(c) and 60.22(3). Thus, under the circumstances, the Residents have no clear right under the direct legislation statute to compel the Board to take action on their petition, and the Town did not have a plain and clear duty to approve the proposed ordinance or

_____

As this appeal does not involve the propriety or the merits of the proposed ordinance itself, we will not further discuss the details of the ordinance's proposed language. *See* ***State ex rel. Althouse v. Madison***, 79 Wis. 2d 97, 108, 255 N.W.2d 449 (1977).

place it on the ballot. We therefore affirm the court's denial of the Residents' petition for a writ of mandamus.

## BACKGROUND

¶5    The facts in this case are not in dispute. In 2021, the Residents sought to employ the provisions of the direct legislation statute to force the Town to take action on their petition for a boating ordinance. The direct legislation statute permits local electors to submit "a petition with the [municipality's] clerk requesting that an attached proposed ordinance or resolution, without alteration, either be adopted by the common council or village board or be referred to a vote of the electors." WIS. STAT. § 9.20(1), (4). The statute requires that the petition be signed and filed by "[a] number of electors equal to at least 15 percent of the votes cast for governor at the last general election in their" municipality, *see* § 9.20(1), which was calculated for the Town to be seventy-eight signatures.

¶6    On August 28, 2021, the Residents filed fifteen petitions containing a total of 150 signatures.[6] On September 2, 2021, the town clerk certified that the 150 signers were electors of the Town. *See* WIS. STAT. § 9.20(3). Thus, the Residents argue that, pursuant to § 9.20(4), the Board was required to act on the petition within thirty days or place the proposed ordinance on the ballot for the Spring 2022 election. The Board neither adopted the proposed ordinance nor took action to place it on the ballot.

¶7    On October 8, 2021, the Residents filed a petition for a writ of mandamus, requesting that the circuit court order the Town to comply with WIS. STAT. § 9.20 by either adopting the proposed ordinance or by placing the issue on

_____

[6] For ease of reading, we refer to these fifteen petitions, collectively, as a single petition.

4

the ballot. The parties filed cross-motions for summary judgment, each alleging that there was no issue of material fact and that they were entitled to judgment as a matter of law. The Town's position was that the direct legislation statute can only be used by citizens of cities and villages and that the statute does not apply to towns that have adopted village powers. *See* WIS. STAT. § 60.22(3).

¶8 In an oral ruling, the circuit court denied the Residents' motion for summary judgment, granted the Town's cross-motion, and dismissed the Residents' petition for a writ of mandamus. After considering the standards by which a court is to review a petition for a writ of mandamus and reviewing the relevant statutes, the court determined that WIS. STAT. § 9.20 "provides a power to electors of a village or city" but provides "a duty to the village or city itself." Because the plain language of WIS. STAT. § 60.22(3) references "powers," but not "duties," the court concluded that § 9.20's "provisions are not taken on when a town adopts village powers pursuant to [§] 60.22(3)." The Residents appeal.

## DISCUSSION

¶9 The question before us on appeal is whether the Residents may utilize the provisions of WIS. STAT. § 9.20 where the Town has adopted village powers under WIS. STAT. § 60.22(3), such that the Town can be ordered to carry out the requirements of the direct legislation statute. Section 60.22(3) provides that, in certain circumstances, town boards "may exercise powers relating to villages and conferred on village boards under [WIS. STAT.] ch. 61, except those powers which conflict with statutes relating to towns and town boards." The Residents argue that because "one of the village powers" listed in ch. 61 is use of the direct legislation statute, *see* WIS. STAT. § 61.342, the direct legislation statute can be used by the citizens of the Town under Wisconsin law. For the reasons that follow, we disagree.

¶10    Our review of a circuit court's summary judgment decision is de novo, and we apply the same methodology as the circuit court. *Springer v. Nohl Elec. Prods. Corp.*, 2018 WI 48, ¶9, 381 Wis. 2d 438, 912 N.W.2d 1. "The methodology governing summary judgment is well-established and we need not repeat it in its entirety," *Progressive N. Ins. Co. v. Jacobson*, 2011 WI App 140, ¶7, 337 Wis. 2d 533, 804 N.W.2d 838, except to note that summary judgment is appropriate when the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," WIS. STAT. § 802.08(2).

¶11    This case also involves the interpretation of a statute, which presents a question of law that we review independently. *See State v. Grandberry*, 2018 WI 29, ¶11, 380 Wis. 2d 541, 910 N.W.2d 214. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46.

¶12    Finally, the Residents brought this case pursuant to a petition for a writ of mandamus. "Mandamus is an extraordinary writ issued in the discretion of the circuit court to compel compliance with a plain legal duty." *Mount Horeb Cmty. Alert v. Village Bd. of Mount Horeb*, 2003 WI 100, ¶9, 263 Wis. 2d 544, 665 N.W.2d 229.

¶13     There is no dispute that "[m]andamus is the proper means to challenge a municipality's failure to comply with the requirements of the direct legislation statute, WIS. STAT. § 9.20." *Mount Horeb*, 263 Wis. 2d 544, ¶9.  To obtain a writ of mandamus, a petitioner must show:  "(1) a clear legal right to relief; (2) a positive and plain legal duty on the part of the official or body to whom the writ is directed; (3) substantial damage due to the nonperformance of the duty; and (4) no adequate remedy at law." *Id.* (formatting altered).  We will uphold a circuit court's decision to grant or deny a writ of mandamus unless the court erroneously exercised its discretion.  *Lake Bluff Hous. Partners v. City of S. Milwaukee*, 197 Wis. 2d 157, 170, 540 N.W.2d 189 (1995).  A court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process, reaches a conclusion a reasonable judge could reach. *Loy v. Bunderson*, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982).

¶14     We begin with a discussion of the applicable statutes.  "Towns in Wisconsin possess those powers granted by statute and any powers that are necessarily implied from a power expressly provided by statute." *Zwiefelhofer v. Town of Cooks Valley*, 2012 WI 7, ¶22, 338 Wis. 2d 488, 809 N.W.2d 362.  "The powers that may be exercised at a town meeting are set forth in WIS. STAT. § 60.10." *Zwiefelhofer*, 338 Wis. 2d 488, ¶22.  Along with the "[d]irect powers" enumerated in § 60.10(1), § 60.10(2) also contains "directives or grants of authority to the town board," including that the town meeting may "[a]uthorize the town board to exercise powers of a village board under [WIS. STAT. §] 60.22(3)." Sec. 60.10(2)(c).  There is no dispute in this case that the Town adopted village powers in 1958, and that resolution has never been rescinded.  Also, as noted above, § 60.22(3) specifically provides that, pursuant to § 60.10(2)(c), the town board "may exercise powers relating to villages and conferred on village boards under [WIS. STAT.] ch. 61,

except those powers which conflict with statutes relating to towns and town boards." Sec. 60.22(3).

¶15     WISCONSIN STAT. ch. 61 "grants a broad range of powers to villages." *Zwiefelhofer*, 338 Wis. 2d 488, ¶24.  For example, WIS. STAT. § 61.34 provides a "general grant" of "powers" to the village board, stating that a village board

> shall have the management and control of the village property, finances, highways, streets, navigable waters, and the public service, and shall have power to act for the government and good order of the village, for its commercial benefit and for the health, safety, welfare and convenience of the public, and may carry its powers into effect by license, regulation, suppression, borrowing, taxation, special assessment, appropriation, fine, imprisonment, and other necessary or convenient means.   The powers hereby conferred shall be in addition to all other grants and shall be limited only by express language.

Sec. 61.34(1).    As relevant to this appeal, WIS. STAT. § 61.342 specifically references the direct legislation statute, providing that "[t]he provisions of [WIS. STAT. §] 9.20, relating to direct legislation, shall be applicable to villages."

¶16     WISCONSIN STAT. § 9.20, in turn, provides the direct legislation procedure by which "the voters themselves adopt legislation." *Mount Horeb*, 263 Wis. 2d 544, ¶13.  "The direct legislation statute provides an initiative procedure by which citizens of a city or village may compel their common council or village board to pass a proposed ordinance directly or put the proposed ordinance before the local electors for a popular vote." *Id.*, ¶14.  A direct legislation petition must be signed by "[a] number of electors equal to at least 15 percent of the votes cast for governor at the last general election in their city or village" and must be filed "with the city or village clerk requesting that an attached proposed ordinance or resolution, without alteration, either be adopted by the common council or village board or be referred to a vote of the electors."  Sec. 9.20(1).  Then, "[w]ithin 15 days after the

petition is filed, the clerk shall determine by careful examination whether the petition is sufficient and whether the proposed ordinance or resolution is in proper form." Sec. 9.20(3).

¶17 "When the original or amended petition is found to be sufficient and the original or amended ordinance or resolution is in proper form, the clerk shall … forward it to the common council or village board immediately." WIS. STAT. § 9.20(3). Thereafter, "[t]he common council or village board shall, without alteration, either pass the ordinance or resolution within 30 days following the date of the clerk's final certificate, or submit it to the electors at the next spring or general election." Sec. 9.20(4). If adopted by either the council, the board, or the voters, the ordinance or resolution is not subject to veto powers and cannot be "repealed or amended within 2 years of adoption except by a vote of the electors." Sec. 9.20(8).

¶18 In this case, the circuit court determined, after reviewing the statutory language and relevant case law, that the statutes were not ambiguous and that WIS. STAT. § 9.20 is not applicable to towns. According to the court, the legal question is:

> Does adoption of village powers under WIS. STAT. § 60.22(3) also impose village duties, including the duties imposed under WIS. STAT. § 61.342? In the alternative, does the adoption of village powers by a town grant those powers available to the electors of a village to the electors of the town?

Thus, the court drew a distinction based on the plain language of the statutes between a "power" and a "duty." The court concluded that § 9.20 "provides a power to electors of a village or city. And a duty to the village or city itself." Because the plain language of § 60.22(3) references "powers," but not "duties," the court reasoned that § 9.20's "provisions are not taken on when a town adopts village

9

powers pursuant to [§] 60.22(3)." Accordingly, the court determined that the first and second elements required for a writ of mandamus—a right "to the legal and administrative consequences of filing a petition" and a corresponding "duty to act upon the [Residents'] petition" under § 9.20—could not be satisfied.

¶19 We agree with the circuit court that the Residents have no clear right to direct legislation, nor did the Town have a positive and plain legal duty to act on the Residents' petition, as the plain language of the statutes does not clearly provide that the provisions of WIS. STAT. § 9.20 are applicable to towns that have adopted village powers. Accordingly, the Residents are not entitled to a writ of mandamus in this case. First, the court's discussion of a distinction between "powers" and "duties" in the statutory scheme is apt. As the court noted, "power" is defined as "[t]he legal right or authorization to act or not act; a person's or organization's ability to alter, by an act of will, the rights, duties, liabilities, or other legal relations either of that person or of another." *Power*, BLACK'S LAW DICTIONARY (11th ed. 2019). A "duty," on the other hand, is a "legal obligation that is owed or due to another and that needs to be satisfied; that which one is bound to do, and for which somebody else has a corresponding right." *Duty*, BLACK'S LAW DICTIONARY (11th ed. 2019).

¶20 As noted above, both WIS. STAT. §§ 60.10(2)(c) and 60.22(3) specifically reference "powers" of the village board. Further, the title of § 60.22 references both the "powers" and "duties" of a town board; yet, § 60.22(3) references only the "exercise of powers relating to villages and conferred on village boards under [WIS. STAT.] ch. 61" without specifically requiring that the town board also adopt any corresponding village board duties. It is also clear, based on our review of multiple subsections of WIS. STAT. § 60.23, that the legislature knows how to draft language that would have conferred on a town board both the powers

and the duties of a village board; however, the legislature did not do so in § 60.22(3). *See* § 60.23(3)(g), (27), (28), (32); ***Milwaukee J. Sentinel v. City of Milwaukee***, 2012 WI 65, ¶36 & n.15, 341 Wis. 2d 607, 815 N.W.2d 367; *see also* WIS. STAT. § 61.35 ("[WIS. STAT. §] 62.23 applies to villages, and the *powers and duties* conferred and imposed by [§] 62.23 upon mayors, councils and specified city officials are hereby conferred upon presidents, village boards, and village officials performing duties similar to the duties of such specified city officials, respectively." (emphasis added)).

¶21     This distinction between powers and duties is important in this case because the provisions of WIS. STAT. § 9.20 are not powers *of a municipality*.  In ***Mount Horeb***, our supreme court explained that "the procedure for direct local legislation established in … § 9.20 'implements the legislative powers that have been reserved to the people' by their elected representatives in the legislature." ***Mount Horeb***, 263 Wis. 2d 544, ¶16 (quoting ***State ex rel. Althouse v. Madison***, 79 Wis. 2d 97, 118, 255 N.W.2d 449 (1977)).  The court also observed that "[d]irect legislation is a potentially powerful limitation on governmental authority, a remedy available *to the people* when their representative government has become unresponsive or misrepresentative." ***Id.***, ¶12 (emphasis added); *see also* ***Althouse***, 79 Wis. 2d at 118-19 ("Those reserved legislative powers are exercised with particular appropriateness under circumstances where the people are of the opinion that their elected representatives are not acting in response to the public will.").  Thus, direct legislation is a power that *the people*—in other words, the electors— reserved for themselves.

¶22     It then follows that if the people have the power under WIS. STAT. § 9.20 to direct legislation, then the municipality, by its council or board, has a corresponding duty—or a legal obligation that is owed or due to another and for

11

which somebody else has a corresponding right—to comply with the terms of the direct legislation statute by facilitating the adoption of legislation pursuant to § 9.20. Thus, as described by the circuit court, "a municipality body's relation to [§] 9.20, is one of a duty not a power." Neither WIS. STAT. §§ 60.10(2)(c) nor 60.22(3) state that towns, in adopting village powers, also adopt village duties.

¶23 Our conclusion that the legislature did not intend that the provisions of the direct legislation statute should apply to towns is further supported by the plain language of the statute. As noted, WIS. STAT. § 60.22 addresses the "[g]eneral powers and duties" of "[t]he town board." Subsection (3) then provides that the town board "may exercise powers relating to villages and conferred on village boards under [WIS. STAT.] ch. 61, except those powers which conflict with statutes relating to towns and town boards." Sec. 60.22(3). Considering the meaning of the words in the statute, we first note that "exercise" means "[t]o make use of; to put into action" or "[t]o implement the terms of; to execute." *Exercise*, BLACK'S LAW DICTIONARY (11th ed. 2019). The definition of "power," as discussed above, is "[t]he legal right or authorization to act or not act." *Power*, BLACK'S LAW DICTIONARY (11th ed. 2019). "Relating to" means "to have relationship or connection." *Relate*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/relating (last visited June 7, 2023). "Conferred" is defined as "to give (something, such as a property or characteristic) to someone or something." *Confer*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/conferred (last visited June 7, 2023).

¶24 Thus, considering the words of WIS. STAT. § 60.22(3) together: a town board may make use of a legal right to act or not act that is connected with villages *and* given to village boards under WIS. STAT. ch. 61. While direct legislation is connected with villages by virtue of WIS. STAT. § 61.342, direct

12

legislation is not a legal right to act that is given to village boards. That legal right belongs to the village electors.

¶25 The Residents reject this reading of the statute, arguing that "[t]he key flaw" in this interpretation is the "conclusion that the only powers that a town acquires when it acquires village powers are the powers of the village board, and that powers of the citizens of a village are not also acquired when a town acquires village powers." Thus, the Residents assert that when a town adopts village powers, the town citizens also adopt the powers of the village citizens. In support of this proposition, the Residents assert that our supreme court's "binding precedent" in *Zwiefelhofer* holds "that all of the powers of a village (and not just the powers of the village board) are acquired by a town that has adopted village powers."

¶26 In *Zwiefelhofer*, residents of the Town of Cooks Valley brought suit against the town seeking a judgment declaring that a nonmetallic mining ordinance was invalid. *Zwiefelhofer*, 338 Wis. 2d 488, ¶1. The residents alleged that the ordinance was a zoning ordinance implemented without county board approval, but if the ordinance was not a zoning ordinance, then county board approval was not required. *Id.*, ¶2. Thus, the "single issue" before our supreme court was whether "the [t]own's Nonmetalic Mining Ordinance [was] a zoning ordinance[.]" *Id.*, ¶4. The court ultimately determined that the ordinance was "a valid exercise of the [t]own's non-zoning police power; no county board approval was required." *Id.*, ¶80.

¶27 In so holding, and as highlighted by the Residents, our supreme court stated: "The Town of Cooks Valley adopted village powers in 2001, pursuant to WIS. STAT. § 60.10(2)(c). Thus, by virtue of the statutes and the Wisconsin Constitution, the [t]own possesses the full panoply of powers enjoyed by villages,

13

including police power and the more specific zoning power." *Zwiefelhofer*, 338 Wis. 2d 488, ¶28. The Residents argue that "[t]he ability of the 150 citizens … who signed the Direct Legislation petition to use the Direct Legislation Statute, which is specifically listed under Chapter 61 village powers at WIS. STAT. § 61.342, is part of the 'full panoply of powers' referenced by the Wisconsin Supreme Court" in *Zwiefelhofer*.

¶28    We disagree that *Zwiefelhofer* controls this case.[7] The Residents take the discussion in *Zwiefelhofer* too far. The "single issue" in that case was whether the nonmetallic mining ordinance was a zoning ordinance, not a more broad discussion of the conveyance of village powers to towns. Further, *Zwiefelhofer* does not address the duties of a town that has adopted village powers, nor does the case specifically discuss whether town citizens may also adopt the powers that have specifically been bestowed on village citizens. Most importantly, *Zwiefelhofer*

---

[7] The Town, in contrast, cites *State ex rel. Poole v. Menomonee Falls*, 55 Wis. 2d 555, 200 N.W.2d 580 (1972), in support of its position that WIS. STAT. § 9.20 does not apply to towns. There, our supreme court was asked to decide "whether the provisions of [§] 9.20 [(1969-70)] providing for 'direct legislation' relate only to cities." *Poole*, 55 Wis. 2d at 558. Based on the statute's plain language, the court determined that the statute did not apply to the electors of villages because a city was the only type of municipality named in the statute. *Id.* at 559-60. The Town argues that *Poole* is still good law and that when, subsequent to *Poole*, the legislature amended § 9.20 to include electors of villages, the "amendment did not include the electors of towns or the electors of towns adopting village powers."

We agree with the Residents that under the circumstances, *Poole* also does not control the issue before us. When *Poole* was decided, the direct legislation statute applied only to cities, and there was no statutory mechanism by which a village could step into the shoes of a city, similar to that granted to towns under WIS. STAT. § 60.22(3). After *Poole*, the legislature amended WIS. STAT. § 9.20 to apply to villages and created WIS. STAT. § 61.342 to clarify that the direct legislation statute is applicable to villages. *See* 1989 Wis. Act 273, §§ 1, 6. Thus, our supreme court's decision in *Poole* does not control here, except to highlight the importance of a plain language reading of the statute. While § 9.20 currently applies only to cities and villages based on the statute's plain language, we recognize that the issue is complicated by the application of additional statutes in the context of a town.

does not address the interplay between powers conferred on village boards and WIS. STAT. § 9.20. Under the circumstances, *Zwiefelhofer* is inapplicable.

¶29 The Residents also dispute the importance of the circuit court's distinction between powers and duties. According to the Residents, "[a]lthough municipal governing bodies do not have the 'power' of Direct Legislation, they do have 'duties' regarding Direct Legislation" and "[t]he exercise of a power necessarily also encompasses a duty." In support of their position, the Residents cite *Mount Horeb* and *Althouse*, explaining that in both of those cases the petitioners "had the power to use Direct Legislation" and the corresponding municipality "had the duty to either adopt the proposed ordinance or place it on the ballot." The Residents explain that they are in the "same position" as the petitioners in *Mount Horeb* and *Althouse*.

¶30 We conclude, however, that the Residents are not in the same position as the petitioners in those cases. The Residents in this case are residents of a town, while the petitioners in *Mount Horeb* and *Althouse* were residents of a village and a city, respectively. *See Mount Horeb*, 263 Wis. 2d 544, ¶2; *Althouse*, 79 Wis. 2d at 102. WISCONSIN STAT. § 9.20 unequivocally grants a power of direct legislation to the residents of cities and villages. We agree with the Residents' general assertion that "powers" and "duties" have an obvious correlation. However, the Residents again extend their reasoning beyond the words of the statute.

¶31     Next, the Residents argue that we must read the statutes in context.[8] *See Kalal*, 271 Wis. 2d 633, ¶46.  As a result, the Residents assert that because WIS. STAT. § 60.22(3) allows a town to "exercise powers relating to villages and conferred on village boards under [WIS. STAT.] ch. 61" and because the direct legislation statute is listed in ch. 61 under WIS. STAT. § 61.342, then the Residents' use of the direct legislation statute is authorized by the statutes.  Further, the Residents claim that "it is significant that the power of Direct Legislation is specifically enumerated as a village power in Chapter 61" because "[w]hen the Legislature amended the statutes to extend the Direct Legislation Statute to villages, it could have simply amended § 9.20 to include villages" but "it did not stop there— it went on to also insert the power of direct legislation as a specified village power in Chapter 61."

¶32     We disagree with the Residents' contextual interpretation.  While WIS. STAT. § 61.342 states that the "provisions" of WIS. STAT. § 9.20 are "applicable to villages," conspicuously missing from § 61.342 is any reference to the provisions of § 9.20 being a "power[] … conferred on village boards" or, as the Residents put it, "a specified village power."  *See* WIS. STAT. § 60.22(3).  "Applicable" simply means "[c]apable of being applied," *Applicable*, BLACK'S LAW DICTIONARY (11th ed. 2019), and does not somehow suggest a more robust designation of legislative authority that would alter the plain terms of § 60.22(3).  If

---

[8] To the extent that the Residents claim it would be an error "to only focus in isolation on the language of the Direct Legislation statute where it refers to cities and villages," we do not address that issue.  First, the Town does not appear to argue that we must consider the plain language of WIS. STAT. § 9.20 alone as a basis to uphold the circuit court's decision.  Further, we agree—given the interplay between the statutes—that the question in this case goes beyond the surface issue of whether § 9.20 on its face applies to towns.

direct legislation is not a village board power, then direct legislation is not a power that a town board can wield under § 60.22(3).

¶33    Stated another way, WIS. STAT. § 60.22(3) does *not* declare that "all provisions under ch. 61 relating to villages are applicable to towns or town boards unless those provisions conflict with statutes relating to towns and town boards." This is how the Residents would like the statute to be read based on implicit reasoning. However, precise language is important for statutory interpretation. If the legislature meant that all the provisions in ch. 61 were to apply to towns, it could have plainly said so in § 60.22(3). It did not. The legislature instead stated that town boards "may exercise powers … conferred on village boards," and we are bound by the words used by the legislature. *See Responsible Use of Rural & Agric. Land v. PSC*, 2000 WI 129, ¶37, 239 Wis. 2d 660, 619 N.W.2d 888 ("[W]e will not read extra words into a statute to achieve a specific result." (alteration in original; citation omitted)); *see also Graziano v. Town of Long Lake*, 191 Wis. 2d 812, 822, 530 N.W.2d 55 (Ct. App. 1995) ("When interpreting the language of a statute, '[i]t is reasonable to presume that the legislature chose its terms carefully and precisely to express its meaning.'" (alteration in original; citation omitted)).

¶34    Along these same lines, the Residents claim that when the legislature amended the statutes to specify that the direct legislation statute is applicable to villages, "it placed that provision as a sub-part of [WIS. STAT.] § 61.34, which is titled 'Village Board Powers.'" Thus, the Residents assert that WIS. STAT. § 61.342 is "included (as [its] numbering makes clear) as [a] subheading[] under the mother statute (§ 61.34) of Village Board Powers," which shows that § 61.342 relates to a "power" rather than a "duty."

¶35    The Residents, however, fail to provide support for their claim that the specific placement of WIS. STAT. § 61.342 within WIS. STAT. ch. 61 has any significance to our analysis.  The residents do not present any legal authority for the idea of a "mother statute" or the notion that § 61.342 is properly designated as a "sub-part" of WIS. STAT. § 61.34.  *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered.").

¶36    Instead, our research reveals that the numbering of WIS. STAT. § 61.342 lacks the Residents' asserted significance.  WISCONSIN STAT. § 13.92(1)(bm) requires that the Legislative Reference Bureau (LRB) "prepare the Wisconsin Statutes for publication" and "formulate and prepare a definite plan for the order, classification, arrangement, and publication of the statutes." Sec. 13.92(1)(bm)1.  The statute further provides that the LRB "[m]ay renumber any chapter or section of the statutes for the purpose of revision, and shall change reference numbers to agree with any renumbered chapter or section." Sec. 13.92(1)(bm)2.  WISCONSIN STAT. § 35.18(3) then provides, in pertinent part:

> All chapters and sections of Wisconsin statutes shall retain their present numbers and titles until changed by the legislative reference bureau or by statute.  Each section shall be designated by a mixed, decimal number, the whole number corresponding to the chapter and the decimal to the section's place in the chapter.

Nowhere in these statutes could we find any support for the Residents' claim that § 61.342 is properly designated as a "sub-part" of § 61.34.

¶37    The Wisconsin Bill Drafting Manual also does not provide support for the Residents' claim.  At best, it provides that "[b]efore you create a new provision, determine whether you can amend an existing statutory provision to accomplish the

purposes. Place the new material in the *most appropriate location* and rearrange existing material as necessary." *Wisconsin Bill Drafting Manual* § 4.11 (2023-24) (emphasis added); *see also Wisconsin Bill Drafting Manual* ch. 3 (2023-24) (describing the numbering of statutory units); Wisconsin State Legislature, *About the Statutes*, https://docs.legis.wisconsin.gov/help/statutes/_2 (last visited June 7, 2023) ("Each statute section is given a mixed decimal section number that consists of the chapter number to the left of the decimal point and the section's location within the chapter to the right of the decimal point…. The decimal system allows the insertion of new sections in any location."). Thus, it appears that when a new decimal-numbered section is placed between two existing sections, that decision is based on the LRB's judgment as to where it logically belongs and does not indicate that the new section is a "sub-part" of the preceding section. If the legislature had intended WIS. STAT. § 61.342 to be a "sub-part" of WIS. STAT. § 61.34, we assume it would have included the language currently in § 61.342 as a subsection of § 61.34 rather than creating a new, unrelated statute section.

¶38 Finally, the Residents complain that this decision fails to consider the policy principles behind the direct legislation statute. According to the Residents, the direct legislation statute is a method by which the "[l]egislature provided citizens of a local government a remedy when the citizens believe their local government is not adequately responding to their concerns." The Residents further assert that, here, the Town is "not acting in response to the public will."

¶39 It is not a foregone conclusion that whenever a unit of government is not properly responding to the will of the people, public policy dictates that the electors must have the power to force change. *See* **Mount Horeb**, 263 Wis. 2d 544, ¶12 ("As a form of pure democracy, however, [direct legislation] also stands in contradiction of the principles of republican government, which is designed to guard

against the oppression of the minority by the majority."). For example, in Wisconsin, there is no statewide direct legislation procedure. *See* Donald Leo Bach, *Vox Populi: Wisconsin's Direct Legislation Statute*, WIS. LAWYER, May 2008, at 15 n.1. Thus, simply because the direct legislation process is applicable to cities and villages does not mean that it must also be applicable to towns, absent clear statutory authority. If the Residents disagree, then they should direct these policy arguments to the legislature. *See **State v. Stanley***, 2012 WI App 42, ¶43, 340 Wis. 2d 663, 814 N.W.2d 867 (2011). In the absence of ambiguity, we must simply apply the statute as written. *See **Kalal***, 271 Wis. 2d 633, ¶45.

## CONCLUSION

¶40    We conclude that the circuit court properly exercised its discretion in denying the Residents' petition for a writ of mandamus. The Residents are unable to demonstrate either "a clear legal right to relief" or "a positive and plain legal duty on the part of the" Town. As demonstrated by the preceding analysis, WIS. STAT. § 9.20 does not apply to the Town and does not grant the Residents the right of direct legislation. Thus, the Town has no legal duty either to adopt the proposed ordinance

or to place the issue on the ballot, and, relatedly, the Residents do not have a clear legal right to that result.[9]

*By the Court.*—Order affirmed.

---

[9] The Residents also argue that they have satisfied the remaining two elements required for a writ of mandamus: "substantial damages or injury should relief not be granted" and "no other adequate remedy at law." *See Mount Horeb Cmty. Alert v. Village Bd. of Mount Horeb*, 2003 WI 100, ¶9, 263 Wis. 2d 544, 665 N.W.2d 229. As to substantial damages or injury, the Residents argue that in the absence of the proposed ordinance, their rights under the Public Trust Doctrine will continue to be interfered with and there will continue to be safety issues on the Town's waterways, environmental destruction, property damage, and economic harm. As to whether there is another adequate remedy at law, the Residents note that a writ of mandamus is the proper method to challenge a municipality's failure to comply with the requirements of the direct legislation statute. *Id.* In response, the Town asserts that the Residents have at least one other adequate remedy at law under WIS. STAT. § 30.68(4)(a) and (b). Those subsections, respectively, prohibit operating a motorboat to create a "hazardous wake or wash" and provide that an operator of a motorboat is liable for damage caused to persons or property as a result of the wake or wash. Given that all four elements of a writ of mandamus must be established, we need not further address the parties' arguments on these points.